UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HALA FARID,

      Plaintiff,

vs.

MEGAN J. BRENNAN, in her official
capacity as, POSTMASTER GENERAL of
the UNITED STATES POSTAL SERVICE,

      Defendant.

CASE NO.: 4:19 CV RH-MJF

_____/

## PLAINTIFF'S COMPLAINT

Plaintiff, HALA FARID (hereinafter "Plaintiff" or "Ms. Farid"), hereby sues Defendant, MEGAN J. BRENNAN, in her official capacity as, POSTMASTER GENERAL of the UNITED STATES POSTAL SERVICE (hereinafter "Defendant" or "USPS"), and states in support thereof:

## NATURE OF THE ACTION

1.  This is an action brought under 42 U.S.C. §2000e et seq.; 42 U.S.C. § 1981a; and 29 U.S.C. §794 (The Rehabilitation Act of 1973). Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights claim jurisdiction). Demand is made herein for an amount in excess of Three Hundred Thousand Dollars ($300,000.00). Declaratory, injunc-

FILED USDC FLND TL
JAN 28 '19 PM 4:50

tive, legal and equitable relief are sought pursuant to the laws set forth above to-gether with attorneys fees, costs and damages.

## VENUE

2. Venue lies in the Northern District of Florida pursuant to above-mentioned statutes, because Ms. Farid resides in this District and the acts or omissions al-leged occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Ms. Farid's claim occurred within this District.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, HALA FARID, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a pro-tected class due to her race and national origin (White-Egyptian) in addition to her disability and/or Defendant's perception of Plaintiff as disabled. Moreover, Plain-tiff is also a member of a protected class due to the fact that she reported discrim-ination and was the victim of retaliation thereafter.

4. At all times pertinent hereto, Defendant, MEGAN J. BRENNAN, in her official capacity as, POSTMASTER GENERAL of the UNITED STATES POSTAL SERVICE, has been organized and existing under the laws of the United States of America. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.

## STATEMENT OF FACTS

5.  On or about July 2005, the Defendant initially hired the Plaintiff as a Rural Carrier Associate, RCA, working at the Lake Jackson facility in Tallahassee, Leon County, Florida.

6.  During the year of 2007 at Lack Jackson facility, the Plaintiff had her MBA, applied for management position, 204-B; and the Postmaster blessed her promotion in a letter (See Exhibit 1). Other Management Officials did not want this to happen and started giving the Plaintiff hard time in almost everything; to ruin her file in records, and make her quit. The Plaintiff was not paid correctly for her labor efforts and mileage; other favored employees got paid her working hours and/ or replaced her when she was available; multiple of unreasonable letters of warnings were issued against her; and she was humiliated in front of her peers. In the same year, the Defendant did not secure her safety and the Plaintiff got involved in work injury. It resulted concussion (that causing sever headaches), shoulder, neck and back problems. The Plaintiff was placed in limited duty. Ms. Farid was singled out and suffered because of Discrimination against her National Origin and Disability, Harassment and Hostile Environment.

7.  On or about the first week of January of 2010, Management Officials worked the Plaintiff against her doctor's restrictions. The Plaintiff filed her first EEO, seeking for help and relief.The more she filed complaints , the more she suffered from Retaliation and endless Discrimination against her National Origin and Disability.

8.  Management Officials scheduled the Plaintiff to work once or twice a week.This caused her financial hardship. Plaintiff avers that retaliatory actions continued,

specifically that her pay continued to be incorrectly and improperly processed. Plaintiff suffered from emotional distress, harassment and hostile environment.

9.  Management blacklisted and punished the Plaintiff for reporting their violations in her EEOs activities. Management Officials expressed their resentment for the Plaintiff because of filling EEO claims, by giving her unreasonable letter of warnings, AWOL ,Absence Without Leave and also surprising her with a letter of termination, stating that there were no jobs available for limited duty employees. This was a discriminatory and retaliatory termination, simply because other injured employees were offered limited duty jobs based on their medical restrictions. This letter of termination was received on the same day when she was handing her boss the doctor's CA-17 form to resume work. The Plaintiff did not sign the letter of termination.

10. On or about 2011 to first quarter of 2014, the Plaintiff suffered because of the low income and of being continuously cheated in her pay. Management Officials allowed, Ms. Brenda Lewis, African American RCA, who was less in seniority than the Plaintiff, to get better opportunities in bidding before the Plaintiff. Unfortunately bidding was manual at that time, not electronically. So Ms. Brenda Lewis became regular, a full time employee in 2013, while the Plaintiff stayed as RCA. Plaintiff suffered from emotional distress as she became aware that filing several of her complaints had automatically blacklisted her. It became impossible to challenge any injustices against her as all channels were closed.

11. On or about April 2014, finally the bidding became electronically and the Plaintiff succeeded to bid on her heavy duty rural route, RR62, working five days, for forty-five hours per week, and Monday was her off day. This route had a standard mileage of 53 miles per day that consumes 9 hours of daily work. Based on this information of working forty five hours a week, this route RR62 was called "45K route" (See Exhibit 2, the evaluated hours of the routes), which allowed the carrier to make almost around $56,000, as salary per year with 5 hours of overtime factored in, that would put the regular carrier in getting paid almost $24 per hour. Getting a salary of this route that had its fixed mileage and hours, did not end her payment issues. However, Plaintiff avers that retaliatory actions continued, specifically that her pay continued to be incorrectly and improperly processed.

12. On or about September 2015, the Plaintiff hurt her back in a work injury. Management Officials planned for her termination. Her doctor issued a CA-17 form of her medical restrictions. When she was still under treatment, Management offered her a full duty job, submitted in a limited duty form for modified jobs for injured employees. Management violated the contract, as carrying the heavy duty route and resuming full time duties, could never be a limited duty job. Delivering mail required repetitive twisting and bending, which contradicted her medical restrictions.Management threatened by emailing copies of the job offer to the District, the Regional Postmaster and the Human Resources Management. Normally, the limited duty job offers were not copied to high positioned employees, unless a serious action of discipline or termination would be taken. Ms. Farid's doctor re-

jected the job offer of December 29 of 2015, and signed after attaching another CA-17 confirming that Ms. Farid could not work, until MRI results are completed. Management did not cooperate to assist the Plaintiff to obtain a resolution.

13. On or about February 1st 2016, Management Officials violated the citation 545-52 and worked the Plaintiff against her doctor's restrictions. She had to accept the job offer or would be fired.

14. The Plaintiff realized that her badge was invalid when entering the station. Her scanner did not recognize her either. Supervisor, Mr. O'Neil Gautier, responded that her badge did not work because she was "...*not supposed to be here*!"

15. The Plaintiff's physician issued a new CA-17 on 2/5/2016 (See Exhibit 3), which was still ignored by the Defendant. Management Officials insisted that Ms. Farid should work the full duty job. Shelonda Foster planned to work the Plaintiff to work on her relief day (See Exhibit 4).

16. On or about 2/10/2016, the Plaintiff slipped due to wet tiled porch when delivering heavy mail. This affected her neck, back and aggravated her prior injury. Mr. O'Neil Gautier refused to do the work injury paperwork, stating that the Plaintiff's direct supervisor was off.

17. Ms. Shelonda Foster showed up on 2/11/2016 and allowed the Plaintiff to leave work and see her doctor. She confirmed that she would not do any paperwork either, since the Plaintiff already had a doctor that gets paid through workers Comp for her claim of September 2015. Management officials misled the Plaintiff and

failed to submit all paperwork to the department of labor to deprive her from medical treatment and benefits through Worker's Compensation.

18. During her absence, Ms. Shelonda Foster paid the Plaintiff, using her sick leave instead of getting her COP, up to 45 calendar days. Later, the Defendant instructed Eagan, the employees' financial service, to collect $1,478.58 (See Exhibit 5) back from the plaintiff and go for collection.

19. The Plaintiff was not aware of the reason of collection. She did not receive from the Defendant any letter about being over paid. This bill came when the Plaintiff was not getting any income or benefits.

20. On or about March 2016, the Claim examiner explained to the Plaintiff that she was given false information. OWCP ( Office of Worker's Comp Program)closed the case of September 2015 and advised the Claimant to proceed for a new claim of February 2016. Misleading has affected Ms. Farid financially, emotionally and physically. The Plaintiff was deprived from her continuation of pay (COP), medical treatments and benefits.

21. On or about March 23 2016, the Plaintiff submitted the CA-1 form which was not processed by the Defendant. Supervisor Mr. O'Neal Gautier placed it on his shelf.

22. Since Management Officials did not issue CA-16 form on February 2016, to allow the Plaintiff receive her medical treatment; physicians refused to see the Plaintiff. The Office of one of the doctors addressed a letter to the employer(See Exhibit 6). Health insurance would not cover work injuries.Worker's Comp would not accept the case unless it gets approved by the Department of Labor.The De-

fendant neglected and ignored the Plaintiff's medical need, to cause more physical harm and financial damages. The Plaintiff's family were were stressed as well because of living on debts.

23. When following up, Management Officials did not find Ms. Farid's CA-1; and misled her again to file CA-2 instead. The Plaintiff prepared that form, and the new Station Manager, Ms. Paula Nahpur, forwarded it to the Department of Labor. The Plaintiff had found out that CA-1 form should have been filed, as the work injury, happened during her route, while delivering mail(See Exhibit 7) .

24. On or about March 2016, during the Plaintiff's absence after her work injury, Management Officials issued the Mail Count of her route , RR62, without notifying Ms. Farid. and dropped her route from 45K and mileage of 53miles per day, (See Exhibit 8) to 43K and Mileage of 52 miles per day(See Exhibit 9). This would affect the Plaintiff's pay, the Workers' Comp benefits and future retirement. Retaliation was the main reason of the Plaintiff's Prior EEOs activities.

25. On or about after the mail count of 2016, the Plaintiff filed a grievance and requested to redo the mail count in her presence(**See Exhibit 10)**. Management Officials ignored her requests. The Plaintiff disputed the mail count and filed an EEO in its timely manner.

26. The Plaintiff did not receive any income neither from Workers' Comp nor her employer till June 2016. This caused a terrible financial crisis to the Plaintiff, as she was paying the medical bills of her work injury(**See Exhibit 11)**. The Plaintiff stayed with no income for almost six month. Management Officials discriminated

and retaliated to delay her pay. Ms. Farid started having accumulated debts and was living on loans ( See Exhibits 12).

27. The Plaintiff hired an attorney for Worker's Comp to handle the unaccepted claim. This affected her financially as she accumulated more debts on her credit cards and loans. Management Officials were not responding to the attorney's certified letters, faxes and regular mail. The Defendant filed to co-operate to resolve that issue and get the claim accepted by Worker's Comp (See Exhibit 13). Time was consumed by the attorney and was paid a lot of money. The work injury of February 2016 was not accepted yet till present by OWCP.

28. The Plaintiff had to search for other Orthopedic Physicians, who accepted Worker's Comp Claims. She found one in Tampa. That costed her a fortune, paying for transportations and the stay. She also paid for the MRIs, X-rays and all the requested examinations by her physician. The Plaintiff is still under treatment and more expenses are unpredicted to calculate.

29. On or about 2016, Management Officials requested from Ms. Farid to provide medical documentation (See Exhibit 14). Ms. Farid was subjected to an unlawful medical inquiry and her confidential medical information was accessed by unauthorized persons.

30. Based on the totality of her conditions, Plaintiff was disabled or Defendant perceived her as disabled.

31. On or about April 28 2016, the Plaintiff was required to work outside of her medical restrictions and was threatened to resume work on 4/29/2016 or get fired.

Management Officials ignored the latest CA-17 form from her physician(See Exhibit 15), which stated that she should be in limited duty. The Defendant forced her to resume her normal full duty, of carrying her own route, RR62, to cause more physical harm.

32. Defendant and its agents were aware of the need for restrictions and the limited duty accommodation but ignored these restrictions.

33. On or about 4/29/2016, the Plaintiff showed up, when talking to her boss, she found out from her Supervisor, Mr. O'Neil Gautier, still had her CA-1 form on his shelf since 3/23/2016. It was never completed or sent to the Department of Labor.

34. On or about 4/29/2016, the Plaintiff worked from 7:15 a.m. to almost 11:15 p.m., but the ambulance picked her up from work, after carrying heavy mail at work. This injury affected her back and nerves to back legs. Management Officials were laughing at the scene. A witness wrote a statement describing this unexpected reaction from Management Officials (See Exhibit 16).

35. Ms. Shelonda Foster blamed the witness for writing downing the truth.

36. The Plaintiff tried to get managements' signatures for her CA-1, but Ms. Paula Nahpur, the Station Manager, and Mr. O'Neal Gautier, a Supervisor, humiliated her in front of her peers and ordered her loudly to get out of the station because of her disability. They added that she should never show up at the station, unless she would be working full time duty.

37. The Plaintiff was instructed by Ms. Paula Nahpur not to enter the station for any reason, because of her disability. That kind of mistreatment caused embarrassment

and stressful feeling to the Plaintiff as she felt that she was not welcomed to be at work. The Plaintiff was not allowed to get Management Official's signatures for her grievances. Ms. Paula Nahpur allowed to meet with the Union Representative, Ms. Jami Cooper, on behalf of the Plaintiff. The Plaintiff was instructed to wait outside the station for hours and was not sure if her grievances were filed or denied. The Plaintiff's only option was filing an EEO.

38.   On or about May 15 2016, the Plaintiff went to her station and requested the missing documentation of CA-1 and CA16 to be sent to the department of Labor. Although the Defendant did call for the ambulance on 4/29/2016 to pick up the Plaintiff from work, Management Officials failed again to complete the work injury paperwork and did not send it to the Department of Labor. The Plaintiff was not paid her COP, but the Defendant, just paid her whatever was left off her sick leave. Management Officials submitted the paperwork late and confirmed that they could not submit the CA-16, to receive medical treatment, because they missed the deadline.

39.   Management Officials retaliated and challenged the Plaintiff's claim by adding false information. The Plaintiff stroke that challenge by submitting the truth and provided the ambulance report, where it showed their arrival time to the station. This contradicted the Defendant's report.

40.   On or about the end of May or beginning of June of 2016, OWCP accepted the claim based on the Plaintiff's response. The Plaintiff started receiving medical treatment and worker's Comp benefits of the injury of 4/29/2016. She received

few days of whatever was left off the COP of her last injury, but lost her banked sick leave (Exhibit 17), when she was supposed to be paid her COP of 45 Calendar days (See Exhibit 18).

41. Ms. Shelonda Foster paid one pay period extra after the COP period passed. Then she waited till the Federal Taxes and social security fees got deducted from the Plaintiff's pay check. Management Officials instructed Eagan to collect from the Plaintiff the full amount before the social security and the tax deduction.

42. The Plaintiff filed a grievance to remove this collection. Eagan was still sending warning letters, with accumulated interest. Because of an old grievance of using the Plaintiff's sick leave incorrectly, instead of awarding the Plaintiff the difference, the Postmaster agreed to reduce $598.77 from the amount of $1,478 (see Exhibit19). Eagan was collecting any money coming to my paystubs, without the Plaintiff's permission. In addition, Ms. Farid was paying few dollars that she could afford.

43. Management failed to explain the debt in a Letter of Demand, before the collection of $1,478.58.

44. Management failed to fix the accumulated problems of Ms. Farid's pay, when consuming her sick leave multiple times instead of her COP.

45. Delaying submitting the work injury claims correctly, and depriving the Plaintiff from getting paid her COP in February 2016. Management Officials violated when paying the Plaintiff her sick leave, instead of COP.

46. The same issues got repeated multiple times, which did not seem as an error at all.

47. Depriving the Plaintiff from receiving medical treatment, appeared to be intentional discrimination and retaliation.

48. Leaving carelessly an injured employee without any medical treatment or income for months is against the human and the employment rights.

49. Working an injured employee, repetitively against the doctor's restriction confirmed discrimination and retaliation.

50. Putting the injured employee with no income and at the same time instructing Eagan to go for collection, after adding accumulated interest, is a violation against the employments rights.

51. The Defendant instructed Eagan to collect all the debt, although they were notified of the pending complaints. Eagan collected all the money, without the Plaintiff's permission, until the amount was satisfied, to Zero balance( See Exhibit 20).

52. On or about June 19 2017, the Plaintiff received another bill of being overpaid COP in the amount of $879.81 (See Exhibit 21)., different than the $1,478.58. These pay errors were intentional Discrimination and Retaliation, due to her prior EEO activities.

53. The Defendant did not give the Plaintiff enough time to receive her full medical treatment to recover. Ms. Farid was offered full duties jobs, instead of limited duty jobs, to punish her for being injured during her duties, to rapid her disability and make her miserably suffer.

54. The Plaintiff's work injuries, and by not allowing her to recover, she was deprived from receiving her full income for years. Because of work injuries and not being allowed to recover, she was receiving only around 66% of her income from Worker's Comp. So she lost almost 1/3 of her income for years. In addition, she could not collect any of her annual tax refund, as Worker's Comp's pay are not taxable. In addition, this created accumulated debts, financial hardship, stress, depression and anxiety (documents available upon request).

55. Plaintiff requested reasonable accommodation in July15th 2016 and attached the CA-17 of her doctor's restrictions (See Exhibit22).

56. Ms. Paula Nahpur wrote on 9/14/2016 that she would not accommodate the Plaintiff. (See Exhibit 23). The Defendant had not honored the Plaintiff's doctor's restrictions, just offered her full duties job to carry and case her Heavy Route, RR62. And if she rejected it, she was threatened to lose her job. The Defendant refused to accommodate the Plaintiff because of Discrimination against her National Origin and Retaliation.

57. Employer accommodated other injured Rural Carriers employees, whose disabilities were even worse than the Plaintiff's. For example, Regular Rural Carrier, Ms. Josephine Davis, who currently works at Lake Jackson Station. She is answering the phone for Customer Services. Ms. Gloria Lojewski, City Carrier, was handling the customer services' issues over the phone as well, at the same station. The Plaintiff could have done the same job, as she used to do it successfully in 2007

and 2008. The Plaintiff wished to work at the Post Office as long as her job did not contradict her medical restrictions.

58. On or about early January of 2018, the Plaintiff had received Form 50, and found out that her route RR62 became pre-maturely a phantom route. Employer's web-site online  showed that Management Officials had reassigned her route into Phantom route by November 25 2017 (See Exhibit 24); Phantom routes are creat-ed to hold a regular carrier on a route but no payment is made to the carrier. When the regular rural carrier is unable to perform all the duties of her or his assigned rural route for a period of 2 years as a result of a job-related illness or injury, the employee must relinquish the route and such route will be posted for bid. The bid is in accordance with Article 12, Section 3, of the National Agreement Between the USPS and the NRLCA.

59. On or about November 2017,Management Officials violated the contract when assigned the Plaintiff's route pre-maturely (See Exhibit25). Usually, a regular rur-al carrier has TWO years to come back if on limited duty, or he/or she lose their route, which can be switched to a phantom route.Without notifying the Plaintiff, Management Officials violated the contract and did not wait for the TWO years to be completed. The Plaintiff's last working day was on 4/29/2016 when the ambu-lance picked her up from work. Management ignored her requests for reasonable accommodation, wrote they could not accommodate her; assigned her route pre-maturely and put her route, RR62 for bidding, and assigned it for another Rural

Carrier, named Laura Ann Dilworth. This violation reflected Discriminatory and Retaliatory actions against the Plaintiff.

60. Since a new rural carrier would be assigned instead of the Plaintiff, the route RR62 came up, as before to 45K and 53 miles per hour (See Exhibit 24). Management Officials re-measured wrongfully the Plaintiff's route,RR62, during her absence leave to reduce her pay and benefits, but the route came up to its normal size and mileage when assigning it to a new carrier.

61. Management Officials forced the Plaintiff to file for disability retirement since management officials could not accommodate her, humiliated her in front of her peers to leave the station because of her disability. Threatened to fire if she could not work against her medical restrictions and planned for her termination.  Management Officials forced the Plaintiff to leave employment from USPS by her own separation and retirement. Management Officials gave her hard time in everything. Mistreatment and its consequences made her working conditions so difficult that a reasonable person in her position would have felt compelled to separate and retire.

62. Discrimination against National Origin & Disability, Harassment, Hostile Working Environment and Retaliation had forced the Plaintiff to move for early disability retirement. The Plaintiff is losing a lot of money when retiring in that early age of 56. Dropping her route to 43K did not only affect her Worker's Comp benefits which was almost 66% of her newly reduced income of her route, but also would decrease her pension of disability retirement, for life.

63. Discrimination against National Origin & Disability, Harassment, Hostile Working Environment and Retaliation had resulted mental anguish, emotional stress and physical harm. Forcing the Plaintiff to work against her doctor's restrictions, to worsen her medical health and cause rapid permanent disability. In addition, the Defendant chose not to complete, nor submit her work injuries paperwork to the Department of Labor, so she would not receive immediate medical treatments. This did affect her current health and physical condition, that caused permanent disability to her back, neck, shoulders, knees, hands, elbows, shin, and ankles. In addition, she is suffering from headaches, since her first injury. Most of the medication affected her stomach, which would not allow her get her daily medication.The Plaintiff cannot walk or stand for long time. She cannot do repetitive bending and twisting. She cannot lift heavy packages more than 15 to 20 pounds. She needs knees replacements. She needs assistant for some normal daily activities, such as showering.

64. On or about February 20th 2018, Eagan issued a letter for collection of debt to the Plaintiff (see Exhibit 26).

65. The Plaintiff had banked her X-Days (See Exhibit 27). Eagan has collected all this money to satisfy the debts, without notifying the Plaintiff. Eagan sent an official letter to disregard the collection and that the debts has been satisfied to Zero balance (See Exhibit).

66. On or about March 21 2018, Eagan confirmed after collecting money from her pay checks, without her permission, that the debt was satisfied to zero balance. (See Exhibit20)

67. On or about June or July 2018, Ms. Gloria Lojewski has called the Plaintiff stating that there were two checks for Ms. Farid left in the drawers, issued since February 2018. Luckily Ms. Gloria Lojewski mailed them to her. These checks had the Plaintiff's mailing address, but none of the Supervisors cared to mail it to her for months, being aware that they would expire after certain dates. Because of Discrimination against National Origin and Retaliation, these checks of the Plaintiff were intentionally ignored.

## COUNT I
## DISABILITY DISCRIMINATION

68. Paragraphs 1 through 11 are incorporated herein by reference.

69. This is an action against Defendant for discrimination based on disability discrimination.

70. Defendant, through its agents, apparent agents, and employees, because of Plaintiff's disability terminated Plaintiff. Defendant took action against Plaintiff because of her disabling condition, i.e., by way of example but not limitation, she had limitations in her ability to work, walk, stand, squat, and bend and/or Defendant's perception of Plaintiff as being disabled.

71. There is no legitimate reason that has been nor can there be any legitimate reason for the adverse treatment of Plaintiff.

72. Defendant knew or should have known of these conditions as they were open and notorious and well known to Defendant. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff.

73. Defendant harbored ill-motives and intent to cause disparate and retaliatory treatment of Plaintiff.

74. Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees thereby causing foreseeable harm to Plaintiff's rights set forth herein.

75. As a direct and proximate cause of Defendant's actions described above,

76. Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will continue in the future.

## COUNT II
## NATIONAL ORIGIN DISCRIMINATION

77. Paragraphs 1 through 11 are re-alleged and incorporated herein by reference.

78. This is an action against Defendant for discrimination based upon national origin brought under 42 U.S.C. §2000e et seq..

79. Plaintiff has been the victim of discrimination on the basis of Plaintiff's national origin in that Plaintiff was treated differently than similarly situated employees of

Defendant who are not Egyptian or of Egyptian descent and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's national origin, Egyptian.

80. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

81. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a national-origin based nature and in violation of the laws set forth herein.

82. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination on contrived allegations.

83. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon national origin in violation of 42 U.S.C. §2000e et seq..

84. As a direct and proximate result of Defendant's conduct described above,

85. Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing.

## COUNT III
## RETALIATION

86. Paragraphs 1 through 11 are hereby re-alleged and reincorporated as if set forth in full herein.

87. Plaintiff has submitted a series of EEO complaints within Defendant on a multitude of issues. Moreover, she has explicitly discussed with her supervisors that she was the victim of discrimination during her employment with Defendant.

88. Defendant is an employer as that term is used under the applicable statutes referenced above.

89. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting Plaintiff under 42U.S.C § 2000e et seq. and other statutory provisions cited herein.

90. The foregoing unlawful actions by Defendant were purposeful.

91. Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

92. Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a

causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

93. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding damages, including without limitation punitive damages, to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of federal law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff with all remedies of $300,000 (for lost monies, benefits and damages pertaining to out of pocket expenses, especially related to, but not limited to medical expenses and loss of retirement benefits and emotional pain/stress, anxiousness, embarrassment, mental anguish, health

issues, loss of enjoyment of life, suffering and other non-monetary losses); For suit costs,

expert fees and any attorney's fees and costs; and

(f) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues set forth herein which are so triable.

Dated this 28th day of January 2019.

Respectfully submitted,

Hala Farid (Pro-se)
4094 Forsythe Way
Tallahassee, FL 32309
hala_farid13@yahoo.com
850 445 9199



Postmaster
**UNITED STATES**
**POSTAL SERVICE**

May 24, 2007

Hala M. Farid
4094 Forsythe Way
Tallahassee, FL 32308

Re:  Request for Management Training

Dear Ms. Farid:

I am in receipt of your application for management training.  The decision to train will be made by your manager, Mary Parker.  I will forward a copy of this application to her for review.

Thank you for your interest in upward mobility in the Postal Service.

Sincerely,

Michael L. Halter
Postmaster

cc:     file
        Mary Parker, Mgr

Exhibit 1

2800 S ADAMS ST.
TALLAHASSEE FL 32301-9998
(850) 216-4304-PHONE
(850) 216-4300-FAX

### 546.27 FLSA Code P

FLSA code P applies to auxiliary rural carriers (Designation 77), part-time flexible rural carriers (Designation 76), substitute rural carriers (Designation 73), rural carrier reliefs (Designation 75), rural carrier associates (Designations 74, 78, and 79), and temporary replacement carriers (Designation 70 - 0).

## 550   Route Types

Rural route types (classifications) are determined by the route evaluation as developed from the national mail count or interim adjustment.

### 551   Regular Rural Routes

#### 551.1   M — Mileage (Rate Schedule Code - RSC) Route

The regular carrier's salary is based upon 12 days per pay period, 312 days per year, or 2,496 hours per year. Mileage routes were established when the compensation for the route miles on the mileage chart was greater than the evaluated hours method of compensation. However, mileage routes can no longer be established. When they become vacant, they are automatically converted and posted under the evaluated hours method.

#### 551.2   H — Evaluated Hour Route

The regular carrier's salary is based on 12 days per pay period, 312 days per year, or 2,496 hours per year. Evaluated pay hours on an H type route may vary from 12 to 46 hours per week.

#### 551.3   J — Evaluated Hour Route

The regular carrier's salary is based on 5 days during 1 week and 6 days the other week, for a total of 11 days per pay period, 286 days a year, or 2,288 hours per year. One relief day per pay period is authorized. Evaluated pay hours vary from 41 to 46 hours per week.



#### 551.4   K — Evaluated Hour Route

The regular carrier's salary is based upon 5 days each week, 260 days per year, or 2,080 hours per year. One relief day is authorized each week. Evaluated pay hours vary from 40 to 48 hours per week.

### 552   Auxiliary Route

An auxiliary route has insufficient evaluated hours to become a regular route, usually less than 39 evaluated hours. A rural carrier associate (Designation 79) or auxiliary carrier (Designation 77) is assigned to this type of route.

Exhibit 2

page 1 of 4

Rural Carrier Procedures                                                        554.2

Exhibit 554a (p. 2)
**Classification Chart**

| From | To | Evaluated Hours and Minutes (Reported on PS Form 4241-A, *Rural Route Evaluation*) | | Pay | Option |
|------|-----|------|------|------|--------|
| 43:30 | 44:10 | RCS | More than 44 hrs. HD | RCS | |
| | | | Less than 44 hrs. HD | H-44 | |
| 44:11 | 44:29 | RCS | More than 44 hrs. HD | RCS | |
| | | | Less than 44 hrs. HD | J-41 | H-44 |
| 44:30 | 45:15 | RCS | More than 45 hrs. HD | RCS | |
| | | | Less than 45 hrs. HD | J-41 | H-45 |
| 45:16 | 45:29 | RCS | More than 45 hrs. HD | RCS | |
| | | | Less than 45 hrs. HD | J-42 | H-45 |
| 45:30 | 46:21 | RCS | More than 46 hrs. HD | RCS | |
| | | | Less than 46 hrs. HD | J-42 | H-46 |
| 46:22 | 46:29 | RCS | More than 46 hrs. HD | RCS | |
| | | | Less than 46 hrs. HD | J-43 | H-46 |
| 46:30 | 47:23 | RCS | More than 43 hrs. HD | J-43 | H-46 |
| | | | Less than 43 hrs. HD | J-43 | |
| 47:24 | 47:27 | RCS | More than 43 hrs. HD | J-43 | H-46 |
| | | | Less than 43 hrs. HD | K-40 | J-43 |
| 47:28 | 48:32 | RCS | More than 44 hrs. HD | J-44 | H-46 |
| | | | Less than 44 hrs. HD | K-40 | J-44 |
| 48:33 | 48:35 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-40 | J-45 |
| 48:36 | 49:37 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-41 | J-45 |
| 49:38 | 49:47 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-41 | J-46 |
| 49:48 | 50:43 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-42 | J-46 |
| 50:44 | 50:59 | RCS | More than 42 hrs. HD | K-42 | J-46 |
| | | | Less than 42 hrs. HD | K-42 | |
| 51:00 | 52:11 | RCS | More than 43 hrs. HD | K-43 | J-46 |
| | | | Less than 43 hrs. HD | K-43 | |
| 52:12 | 52:54 | RCS | More than 44 hrs. HD | K-44 | J-46 |
| | | | Less than 44 hrs. HD | K-44 | |
| 52:55 | 53:23 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-44 | |
| 53:24 | 54:35 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-45 | |
| 54:36 | 55:47 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-46 | |
| 55:48 | 56:59 | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-47 | |
| 57:00 | OVER | . . . . . . . . . . . . . . . . . . . . . . . . . . . | | K-48 | |

*Comparison to mileage salary is made when a route has not been vacant after PP 26-78.*

Exhibit 2
p. 2 of 4

562.1

Exhibit 562
**FLSA Code A**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BRENTON  DL | | | 26-4567 | E 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 | | 7 10 | H001 | A | 03 | 23 | | | |

REGULAR RURAL CARRIER TIME CERTIFICATE

This certifies that the above carrier rendered service in compliance with Postal regulations

The assigned carrier is compensated as follows:

Week 1     31.50 hours at RSC R, attained step, and six trips EMA.

Week 2     40 hours at RSC R, attained step, plus 1.25 overtime hours over 40 at 150 percent of the same rate, and six trips EMA.



### 562.1  Regular Rural Carrier

### 562.11  Pay

Regular rural carriers are compensated at the base annual rate, attained step for a 40-hour evaluated route divided by 2,080. The annual rate for RSC B is also the same salary. Overtime is calculated at 150 percent of this hourly rate.

*Example:*

Base Annual Rate (AR) for 40 hours at step 12 = $42,163

$42,163 \div 2,080 = $20,2707 (hourly rate)

$20,2707 \times 150\% = $30,4060 (OT rate)

### 562.12  Leave

Compensation for leave is at the daily evaluated rate as determined in 561.3.

### 562.13  Relief Day Worked - X Days

Regular rural carriers under FLSA code A assigned to J or K routes are not granted days off (X days) for working their assigned relief day (J or K day). Compensation is computed on actual hours worked. Therefore, work performed on the relief days is paid at that time.

### 562.2  Substitute Rural Carrier (Designation 72)

### 562.21  Pay

Compensation is made at the base annual rate, attained step of a 40-hour evaluated route divided by 2,000. Add to this rate the annual COLA rate and

Exhibit 2
p. 3 of 4



### 567.33   Routes of 40 to 48 Hours

Carriers assigned to J and K type routes may be required to give assistance to their replacements on their scheduled relief day (J or K day). These hours are reported in the Christmas Assistant's Work Hours block on PS Form 1314 for the appropriate week and computed as Christmas OT hours.

Normally, only the hours entered in the Actual Weekly Work Hours block would be considered for weekly OT, but during the Christmas period, the Actual Weekly Work Hours and the Christmas Assistant's Work Hours blocks are added together to determine FLSA weekly OT (hours over 56).

Hours worked over 12 a day or 56 per week are not calculated toward Christmas OT hours. These hours are paid as FLSA OT in the current pay period.

To determine workhours when workdays are less than the required days of service, take the appropriate daily evaluation, multiply by the number of leave days, and add to actual workhours, as reported on PS Form 1314 for that week.

To determine the daily evaluation, use the following divisors:

    H type route    = 6

    J type route = 5.5



    K type route    = 5

To determine the FLSA overtime and the total Christmas overtime, follow the examples below:

***Example:*** J Route - 46-Hour Route

        46 hour route ÷ 5.5 = 8.36 (daily evaluation)

    47.25      actual workhours reported for 4 days' work
    + 9.16     Christmas assistant workhours performed on J day
    56.41
    −56.00
      .41      FLSA OT

    47.25      actual workhours reported for 4 days' work
    + 8.36     evaluated hours for 1 paid leave day
    55.61
    −41.82     (46 heavy duty 5.5 × 5 days)
    13.79
    + 8.75     (9.16 Christmas assistant hours minus .41 FLSA OT)
    22.54      Total Christmas OT

Exhibit 2
p. 4 of 4

Feb 09 16 04:08a                                                                                p.12

Feb 05 16 02:42p                        Exhibit 3                                        p.1

# uty Status Report

## U.S. Department of Labor
### Office of Workers' Compensation Programs

s form is provided for the purpose of obtaining a duty status report for the employee named below. This request
s not constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any previous
orization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.) and is required to obtain
tain a benefit. Information collected will be handled and stored in compliance with the Freedom of Information Act, the
acy Act of 1974 and the OMB Cir. A-130. Persons are not required to respond to this collection of information unless it
ays a currently valid OMB control number.

OMB No. 1240-0046
Expires: 01-31-2018

OWCP File Number
(If known)

| SIDE A - Supervisor Complete this side and refer to physician | SIDE B - Physician; Complete this side |

mployee's Name (Last, first middle)
**FARID  HALA**

8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5?  ☐ Yes   ☐ No (if not, describe)

ate of Injury (Month, day, yr.)
**9-4-2015**      3. Social Security Number

ccupation

9. Description of Clinical Findings

escribe How the Injury Occurred and State Parts of the Body Affected

10. Diagnosis(es) Due to Injury  ~~~~~ inflammation + HNP     11. Other Disabling Conditions

he Employee Works  ___ Hours Per Day   **5**  Days Per Week

12. Employee Advised to Resume Work?  ☑ Yes, Date Advised   ☐ No

ecify the Usual Work Requirements of the Employee. Check hether Employee Performs These Tasks or is Exposed Continuously intermittently, and Give Number of Hours.

13. Employee Able to Perform Regular Work Described on Side A?
☐ Yes, if so   ☐ Full-Time or   ☐ Part-Time
☐ No, if not, complete below.        work  Full  time

| Activity | Continuous | Intermittent | | Continuous | Intermittent | |
|---|---|---|---|---|---|---|
| | #lbs. | #lbs. | | #lbs. | #lbs. | |
| fting/Carrying: e Max Wt. | 15 | 15 | Hrs Per Day | | ☐ type job | @ Sedentary Hrs Per Day |
| tting | ☑ | ☐ | 8 Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| anding | ☑ | ☐ | 8 Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| alking | ☑ | ☐ | 8 Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| imbing | ☐ | ☐ | None Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| eeling | ☐ | ☐ | None Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| ending/Stooping | ☐ | ☐ | None Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| wisting | ☐ | ☐ | None Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| ulling/Pushing | ☑ | ☐ | 8 Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| mple Grasping | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| ine Manipulation ludes keyboarding) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| aching above oulder | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| riving a Vehicle ecify) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| perating Machinery ecify) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| emp. Extremes | ☑ | | range in degrees F | ☐ | | range in degrees F |
| igh Humidity | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| hemicals, Solvents, (Identify) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| umes/Dust (Identify) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| oise (Give dBA) | ☐ | ☐ | dBA Hrs Per Day | ☐ | ☐ | dBA Hrs Per Day |

ther (Describe)
No bending/twisting @ waist

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition?
(e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.)
☐ Yes  ☐ No (Describe)

15. Date of Examination  **2-5-16**      16. Date of Next Appointment

u have a disability (a substantially limiting physical or mental impairment), e
ntact OWCP for information on communication assistance (alternate formats or
languages interpretation, accommodations and/or modifications. See instructions
sability-Related Assistance under Federal disability nondiscrimination law.

17. Specialty

18. Tax Identification Number  **59-359830**

19. Physician's Signature                        20. Date **2-5-16**    CA-17 (Rev. 08-14)

WCH 0152R, 2 Gilbert-Chandler

**4 3**

Working me
on my
relief Day!

| U. S. Postal Service ROUTING SLIP | Office of Room No. | |
|---|---|---|
| To: 1 Farid | | |
| 2 | | |
| 3 | | ☐ Recommendation |
| 4 | | ☐ Prepare Reply |
| | | ☐ |
| From: FOETER, SCS | | Phone No. |
| Date: 2/9/16 | | Room No. |

Remarks:

You are mandated to work your RELIEF/HOLIDAY on

Feb 13, 2016

ELM 665.15 Obedience to Orders.

Employees must obey the instructions of their supervisors. If an employee has
reason to question the propriety of a supervisor's order, the individual must
nevertheless carry out the order and may immediately file a protest in writing to the
official in charge of the installation or may appeal through official channels.

ITEM 0-13, April 1989 (Additional Remarks on Reverse)

Exhibit 4

47

| Customer # | Transaction Date | Number | PO Number | Class | Original Amount | Balance Due | Amount Adjusted | Due Date | Transaction Type | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|
| 3600357 | 23-Feb-18 | J04660201804 | | Payment | -$689.39 | $0.00 | $0.00 | 21-Feb-18 | PAYROLL DEDUCTIONS | -$689.39 |
| 3600357 | 27-Nov-17 | 1092 | | Payment | -$10.00 | $0.00 | $0.00 | 27-Nov-17 | MANUAL-MPLS | -$10.00 |
| 3600357 | 3-Jul-17 | 1086 | | Payment | -$25.00 | $0.00 | $0.00 | 3-Jul-17 | MANUAL-MPLS | -$25.00 |
| 3600357 | 16-Jun-17 | P603201712 | | Payment | -$99.85 | $0.00 | $0.00 | 14-Jun-17 | PAYROLL DEDUCTIONS | -$99.85 |
| 3600357 | 14-Jun-17 | 702819431 | M58480 PRD | Credit Memo | -$317.75 | $0.00 | $0.00 | 14-Jun-17 | CM-PAYROLL/APS | -$317.75 |
| 3600357 | 14-Jun-17 | 702818183 | P60331 PRD | Credit Memo | -$264.05 | $0.00 | $0.00 | 14-Jun-17 | CM-PAYROLL/APS | -$264.05 |
| 3600357 | 2-Jun-17 | P603020201711 | | Payment | -$51.67 | $0.00 | $0.00 | 31-May-17 | PAYROLL DEDUCTIONS | -$51.67 |
| 3600357 | 19-Apr-17 | 702805221 | M58480 PRD | Invoice | $317.75 | $0.00 | | 19-May-17 | HB | |
| 3600357 | 27-Jan-17 | P603020201702 | | Payment | -$3.90 | $0.00 | $0.00 | 25-Jan-17 | PAYROLL DEDUCTIONS | -$3.90 |
| 3600357 | 30-Dec-16 | M57110201626 | | Payment | -$11.31 | $0.00 | $0.00 | 28-Dec-16 | PAYROLL DEDUCTIONS | -$11.31 |
| 3600357 | 2-Nov-16 | 702763655 | P60330 PRD | Invoice | $264.05 | $0.00 | $0.00 | 2-Dec-16 | HB | $0.00 |
| 3600357 | 4-May-16 | 702725072 | M57110 PRD | Invoice | $11.31 | $0.00 | $0.00 | 3-Jun-16 | HB | $11.31 |
| 3600357 | 9-Mar-16 | 702711318 | J04660 PRD | Invoice | $1,478.58 | $0.00 | -$598.77 | 8-Apr-16 | PAYROLL/APS | $879.81 |
| 3600357 | 3-Sep-14 | 238 | | Payment | -$50.60 | $0.00 | $0.00 | 3-Sep-14 | MANUAL-MPLS | -$50.60 |
| 3600357 | 2-Jul-14 | 702561869 | V95000 PRD | Invoice | $50.60 | $0.00 | $0.00 | 1-Aug-14 | PAYROLL/APS | $50.60 |
| 3600357 | 28-Mar-14 | J401202014 07 | | Payment | -$125.68 | $0.00 | $0.00 | 26-Mar-14 | PAYROLL DEDUCTIONS | -$125.68 |
| 3600357 | 14-Mar-14 | J401202014 06 | | Payment | -$202.29 | $0.00 | $0.00 | 12-Mar-14 | PAYROLL DEDUCTIONS | -$202.29 |
| 3600357 | 28-Feb-14 | J401202014 05 | | Payment | -$254.62 | $0.00 | $0.00 | 26-Feb-14 | PAYROLL DEDUCTIONS | -$254.62 |
| 3600357 | 14-Feb-14 | J401202014 03 | | Payment | -$124.51 | $0.00 | $0.00 | 12-Feb-14 | PAYROLL DEDUCTIONS | -$124.51 |
| 3600357 | 31-Jan-14 | J401202014 03 | | Payment | -$168.81 | $0.00 | $0.00 | 29-Jan-14 | PAYROLL DEDUCTIONS | -$168.81 |
| 3600357 | 17-Jan-14 | J401202014 02 | | Payment | -$168.83 | $0.00 | $0.00 | 15-Jan-14 | PAYROLL DEDUCTIONS | -$168.83 |
| 3600357 | 9-Aug-13 | 1077 | | Payment | -$10.00 | $0.00 | $0.00 | 9-Aug-13 | MANUAL-MPLS | -$10.00 |
| 3600357 | 6-Feb-13 | 1003 | | Payment | -$10.00 | $0.00 | $0.00 | 6-Feb-13 | MANUAL-MPLS | -$10.00 |
| 3600357 | 8-Jan-13 | 1002 | | Payment | -$10.00 | $0.00 | $0.00 | 8-Jan-13 | MANUAL-MPLS | -$10.00 |
| 3600357 | 3-Oct-12 | 631 | | Payment | -$10.00 | $0.00 | $0.00 | 3-Oct-12 | MANUAL-MPLS | -$10.00 |
| 3600357 | 20-Jun-12 | 702355512 | J40120 PRD | Invoice | $2,169.47 | $0.00 | -$1,084.73 | 20-Jul-12 | PAYROLL/APS | $1,084.74 |
| Total | | | | | $1,683.50 | $0.00 | -$1,683.50 | | | -$581.80 |

Exhibit 5

Exhibit 6
p. 1 of 2

# CAPITAL NEUROSURGERY
## A.M. CARR, M.D.

1889 PROFESSIONAL PARK CIRCLE, SUITE 50 · TALLAHASSEE, FLORIDA 32308 · TELEPHONE (850) 878-7574

05-04-16

To Whom It May Concern:

Hala Farid came to our office today under CHP for treatment for W/C Depart of Labor Claim. She was told we can't treat her under CHP.

Please help this nice lady in her attempts to get treated for her neck & back.

Sincerely,

Sharon McMullen
Office Manager

Exhibit 6
p. 2 of 2

## Capital Neurosurgery
Brain ◆ Peripheral Nerve ◆ Spine

1889 Professional Park Circle, Suite 50
Tallahassee, FL 32308

O'Neil

Exhibit 7

# TYPES OF CLAIMS

### Traumatic Injury (CA-1)

According to the Federal Employees' Compensation Act (FECA) a traumatic injury is defined as:

> "a wound or other condition of the body caused by external force, including stress or strain, which is identifiable as to the time and place of occurrence and member or function of the body affected. The injury must be caused by a specific event or incident or series of events or incidents within a single work day or work shift."

The key to this definition is that an event or series of events must have occurred during one work day. If an injury or illness occurred due to a repetitive event, it should be filed as an occupational injury claim.

If an employee suffers an on-the-job traumatic injury, he/she should immediately notify a supervisor and request a CA-1 and authorization for medical treatment. The injured employee should request a Form CA-16 and identify the physician that has been selected to provide medical treatment for the injury.

If possible, the injured worker should take the CA-16 when first going to the doctor. The Postal Service should also provide a CA-17 (Duty Status Report) and a HCFA-1500 (AMA Uniform Health Insurance Claim Form) for the physician to complete and return to the Postal Service.

As soon as possible after the injury, the injured worker will want to complete a Form CA-1 (Federal Employees' Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation). This must be done within 30 days of the date of injury in order for the injured worker to be eligible for continuation of pay (COP). On the front of this form, the injured worker will want to mark the box indicating COP. COP is the continuation of regular pay with no charge to sick leave or annual leave for the first 45 calendar days of disability. Please retain the receipt and request a copy of the completed CA-1 from the supervisor.

After OWCP receives the CA-1 from the Postal Service, they will send the injured worker a postcard that identifies the OWCP case file number. The injured worker should receive this number in approximately 2 weeks from the date that OWCP receives the claim. Use this number on all documents submitted to OWCP. Instruct the doctor and other medical providers to include this case file number on all bills or other correspondence sent to OWCP.

If an injured worker is unable to work because of an injury, he or she may be eligible for COP. If the injured worker has requested COP on the CA-1 he or she must ensure that medical evidence is submitted to the Postal Service that shows he or she sustained a traumatic injury and are unable to work as a result of it. Forms CA-16 or CA-17, or a narrative report from the doctor would generally meet this requirement. The Postal Service may stop payment of COP if they do not receive medical evidence within 10 working days after the date the injured worker submitted the CA-1, or the date the injured worker stopped work, whichever is later.

If the injured worker elected to receive sick or annual leave instead of COP, and later elects COP for a period that he or she used leave, the Postal Service shall grant COP, provided the request for COP is submitted within one year of the date that leave was used, the Postal Service has received medical evidence that the injured worker was unable to work, and he or she was otherwise entitled to COP.

If the injured worker is not entitled to COP or the 45 calendar days have elapsed, and he or she is in a LWOP status or expect to lose pay because he or she is unable to work, the injured worker may claim compensation by filing Form CA-7 (Claim for Compensation on Account of Traumatic Injury or Occupational Disease) or may use leave.

*March 2015*      *RR 62*

| 01 | Effective Date | Notification of Personnel Action | | 02 | Social Security Number |
|----|----------------|------|---|----|------------------------|
| | 03-06-2015 | **UNITED STATES POSTAL SERVICE®** | | | 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 |

**EMPLOYEE INFORMATION**          U. S. Postal Service

| | | | | | |
|----|----|----|----|----|----|
| 03 | Employee Name-Last | FARID | 38 | Probation Expir Date | |
| 04 | Employee Name-First | HALA | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | M | 40 | Pay Location | 004 |
| 06 | Mailing Address Street/Box/Apts | 4094 FORSYTHE WAY | 41 | Rural Carrier-Route | 00062 |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | TALLAHASSEE | 43 | Rural Carr-Pay Type | K - 5 DAY HEAVY ROUTE |
| 08 | Mailing Address-State | FL | 45 | Rural Carr-FLSA | B |
| 09 | Mailing Address-Zip+4 | 32309-0000 | 46 | Rural Carr-Commit | Y |
| 10 | Date of Birth | 02-27-1962 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | 45 |
| 12 | Sex | | 49 | Rural Carr-Miles | 53 |
| 13 | Ethnicity–Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2325-01XX |
| 15 | Leave Comp Date | 04-05-2014 | 52 | Position title | RURAL CARRIER |
| 16 | Enter on Duty Date | 07-23-2005 | 53 | Labor Dist Code | 2500 |
| 17 | Retirement Comp Date | 04-05-2014 | 54 | Designation/Activity | 71/0 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | 04-05-2014 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | | **SALARY INFORMATION** | |
| 23 | Leave Data Category | 4.00 - HOURS/PP | 59 | Pay Rate Code | P |
| 24 | Leave Data-Chg PPYR | 09 2017 | 60 | Rate Schedule Code | R - RURAL |
| 25 | Leave Data-Type | 1 - ADVANCE AL - EARN SL | 61 | Grade/Step | 00/ A |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 51894.00 |
| 27 | *reserved for future use* | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | E - FERS-FRAE | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | | 65 | Next Step PPYR | 04 2016 |
| 30 | Life Insurance | L0 -Basic+Opt A +2x Opt B | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| | **POSITION INFORMATION** | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 11-8893 | 69 | Protected RSC | R |
| 33 | Employ Office-Name | TLH-LAKE JACKSON STA | 70 | Protected Grade/Step | 00/ A |
| 34 | Employ Office-Address | MANAGER TLH-LAKE JACKSON STA 3607 N MONROE ST | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | 45 |
| 35 | Duty Station-Fin No | 11-8893 | 73 | Protected RC Miles | 0 |
| 36 | Duty Station-Name | TLH-LAKE JACKSON STA | 74 | RC Guaranteed Salary | 0.00 |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |
| | **NATURE OF PERSONNEL ACTION** | | | | |
| 77 | Nature of Action Code | 292 | 78 | Authority | 39-USC Sect 1001 |
| 79 | Description | RETURN TO DUTY(RTD) | | | |
| 80 | Code | | 81 | Code | | 82 | Code | | 83 | Code | |

| 84 | Remarks |
|----|---------|

PERSON ID:03600357 PERS ASSGN:05053920
RECEIVED NOTIFICATION FROM GULF ATLANTIC DISTRICT HRM TO RETURN EMPLOYEE TO
DUTY FROM OWCP EFFECTIVE 03 06 15 OWCP 06 2347294 REMEDY INC 9293354
SWILKINSON PPS 03 10 15

*Exhibit 8*

| 85 | Authorization MANAGER, HUMAN RESOURCES      SHARED SERVICE CENTER | 86 | Processed Date | 03-10-2015 |
|----|--------|----|----------------|------------|
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

*May 2016*                                                    *RR62*

| 01 | Effective Date | **Notification of Personnel Action** | 02 | Social Security Number |
|---|---|---|---|---|
| | 05-14-2016 | **UNITED STATES POSTAL SERVICE**® | | 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 |

**EMPLOYEE INFORMATION**                    U. S. Postal Service

| | | | | | |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | FARID | 38 | Probation Expir Date | |
| 04 | Employee Name-First | HALA | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | M | 40 | Pay Location | 004 |
| 06 | Mailing Address Street/Box/Apts | 4094 FORSYTHE WAY | 41 | Rural Carrier-Route | 00062 |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | TALLAHASSEE | 43 | Rural Carr-Pay Type | K - 5 DAY HEAVY ROUTE |
| 08 | Mailing Address-State | FL | 45 | Rural Carr-FLSA | B |
| 09 | Mailing Address-Zip+4 | 32309-0000 | 46 | Rural Carr-Commit | Y |
| 10 | Date of Birth | 02-27-1962 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | 44 |
| 12 | Sex | | 49 | Rural Carr-Miles | 52 |
| 13 | Ethnicity–Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2325-01XX |
| 15 | Leave Comp Date | 04-05-2014 | 52 | Position title | RURAL CARRIER |
| 16 | Enter on Duty Date | 07-23-2005 | 53 | Labor Dist Code | 2500 |
| 17 | Retirement Comp Date | 04-05-2014 | 54 | Designation/Activity | 71/0 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | 04-05-2014 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | | **SALARY INFORMATION** | |
| 23 | Leave Data Category | 4.00 - HOURS/PP | 59 | Pay Rate Code | P |
| 24 | Leave Data-Chg PPYR | 09 2017 | 60 | Rate Schedule Code | R - RURAL |
| 25 | Leave Data-Type | 1 - ADVANCE AL - EARN SL | 61 | Grade/Step | 00/ B |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 56850.00 |
| 27 | *reserved for future use* | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | E - FERS-FRAE | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | LW - LEAVE WITHOUT PAY | 65 | Next Step PPYR | 26 2017 |
| 30 | Life Insurance | L0 -Basic+Opt A +2x Opt B | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| | **POSITION INFORMATION** | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 11-8893 | 69 | Protected RSC | R |
| 33 | Employ Office-Name | TLH-LAKE JACKSON STA | 70 | Protected Grade/Step | 00/ B |
| 34 | Employ Office-Address | MANAGER TLH-LAKE JACKSON STA 3607 N MONROE ST | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | 45 |
| 35 | Duty Station-Fin No | 11-8893 | 73 | Protected RC Miles | 0 |
| 36 | Duty Station-Name | TLH-LAKE JACKSON STA | 74 | RC Guaranteed Salary | 0.00 |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |
| | **NATURE OF PERSONNEL ACTION** | | | | |
| 77 | Nature of Action Code | 904 | 78 | Authority | 39-USC Sect 1001 |
| 79 | Description | CHANGE IN ROUTE | | | |
| 80 | Code | | 81 | Code | | 82 | Code | | 83 | Code | |
| 84 | Remarks | | | | |

PERSON ID:03600357 PERS ASSGN:05053920

*Exhibit 9*

| 85 | Authorization MANAGER, HUMAN RESOURCES    SHARED SERVICE CENTER | 86 | Processed Date | 05-16-2016 |
|---|---|---|---|---|
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

Exhibit 10

p. 1 of 4

July 21st 2016

Paula Nahpur,
Station Manager of Lake Jackson
3607 N. Monroe St.
Tallahassee, FL 32303
Fax # 850 562- 0567

RE: **REQUESTING RE-MEASURING RR62**

Dear Paula Nahpur:

In accordance with **Chapter 6** of the M-38, Rural routes shall be remeasured upon request of the Rural Carrier. It is my right to be present in a non-duty status at the remeasurement (See attachments).

Please find the following attachments of **Article 30.1.H, Chapter 6** (citations of 612, 621,623, 624,625), **Form 4003, Form 4027, Rural Carrier Duties and Responsibilities**, signed by Vice President Edward Phelan (cover page and pages from pp. 109-135).

Mail boxes were moved near houses, instead of sidewalk of the street, new houses were built, and more. Such changes should be measured in the presence of the regular carrier: Measurement at the authorized loading and unloading area of the route, accountables, postage due, pick-ups, authorized dismounts, etc.. Measuring of rural routes will be conducted by using a device or odometer that has been tested for accuracy.

This is a huge routes that receives a huge volume of flats, letters, packages, accountable and pick-ups. This route was mostly splitted by different subs, who could have mistaken-

1

62

Exhibit C

p. 2 of 4

ly mixed the raw mail and pick-ups with the other carried routes. The average of time is nine hours per day, during the normal days. In the holidays it might reach between twelve to fourteen hours. The rural carrier assigned to the route has the right to be present during the course of the measurement in a non-duty, non-pay status. Therefore this route has to be re-measured in order to get a fair evaluation.

Please contact me to schedule the convenient date to start the mail count.

Yours truly ,

HALA M. FARID
4094 Forsythe Way
Tallahassee, FL 32309
 phone # 850 445-9199

c.c./ Jami Cooper

2

63

*Disputing mail Count for the following reasons:*

It is unfair that my route (RR62) went down from 45K to 43K. I am disputing the Mail Count evaluation of March 2016 that occurred at Lake Jackson Station of Tallahassee- Florida for the following reasons:

1) I was off because of my work injury and no one would be more careful of counting every single piece for delivery, picked up packages or collected raw mail, other than the regular carrier himself/herself. We are all humans and mistakes always happen. So I always **review** what was counted to double check and make sure all accountables were added. This route always gets a huge volume of mail that serves a lot of businessmen, who always receive a lot of certified letters, registered mail and express mail.

2) During my absence in the mail-count period, my route was run or split by different substitutes, sometimes from other stations. Most of the RCAs do not review what was counted or pay attention to what was missed. They care more about finishing their routes fast, especially if they are caring more than one route. Usually the routes that get split by different subs, sometimes the carriers associates mistakenly mix the collected raw mail & the pick ups with the other routes they are carrying on the same day.

3) In my route, I have **new mail boxes added** and **new houses recently built**, such as 2 houses in Carr Ln, 1 in Neamathla Trail, 1 in Robin Kay Road and others that were under constructions; which could have been occupied by now.

4) Peggy Senor, Former supervisor, was handling the mail count of March 2016 in our station, Lake Jackson. She ignored me intentionally when I visited my station on 3/23/2016, afternoon. This behavior made me feel uncomfortable when I was informed that she was in charge of the mail count for the Rural Carriers. She had a long history of retaliation against me and this was the major reasons of my multiple EEOs filed against her. I truly suffered from her endless discrimination and retaliation. I hope this kind of resentment is not there anymore. I think it is inappropriate to have the mail count evaluated by the individuals who were involved in such history of EEOs.

5) My route is really big and it takes almost 9 hours, if not more, to finish in normal days. It might take 12 to 15 hours in holidays for the carrier to finish the route. I have attached the latest 4240, when I was off, so you can see how long it takes for a carrier to finish this route, in normal days. Some finished it in 11 & 50 hours in March 2016. And please put in the consideration that this was not during the holiday seasons.

6) Please compare all the rural routes at Lake Jackson and you will find out that no other route went down 2 hours per week, like mine. And I do not understand the reason? No businesses were closed. But in fact new houses are built and occupied. I do not see how can a big heavy route that has rich customers and businessmen, who receive daily a lot of packages (as I get daily 2 full hampers and 2 full tubs of spurs) and many accountables. It's a big route that receives a heavy volume of DPS and flats. How can the other routes go up, when no big changes happen and mine go down when it is growing? In fact, I was afraid that my route would go up a lot, then be splitted.

Dropping my route from 45K to 43K is extremely unfair. I request to freeze the 45K, as before, until I resume my duties. I am sure you are aware that the absence of the regular carrier does affect the mail count evaluation. I request neutral employees, without any history of discrimination, to do the mail count. Management officials can decide the time they want to redo the mail count.

RECEIVED

MAY 11 2016

NEEOISO

1/1

Exhibit   10

p. 3 of 4

57

Exhibit 10
p. 4 of 4

Article 30.1.H



**E. Route Remeasurement**

Rural routes shall be remeasured upon request of the rural carrier or when the Employer determines it necessary. The rural carrier assigned to the route has the right to be present in a non-duty status at the remeasurement.

**F. Lunch Break**

1. Rural carrier craft employees may stop for not more than thirty (30) minutes for lunch. If carriers stop for lunch, the exact time used must be recorded.

2. Lunch may be taken in segments of less than thirty (30) minutes, at the carrier's option, provided the time taken does not exceed thirty (30) minutes. Segments may be taken in the office or on the route, provided the normal schedule is maintained to the extent possible. The parties agree that the lunch time taken by the carrier is not compensable.

3. Rural carrier craft employees may be permitted to travel a reasonable distance off their prescribed line of travel to and from an authorized lunch stop.

**G. Scheduling**

Scheduling is the responsibility of the Employer. Schedules shall be realistic, based upon the receipt and availability of the mail, the route evaluation, and other related service considerations. The rural carrier will receive reasonable advance notice when the schedule is to be changed. When the Employer changes the relief day of the regular carrier in accordance with Article 9.2.C.5.d.(2) and 9.2.C.5.e., the carrier will receive notice of the change no later than the Saturday of the service week preceding the effective week of the change.

**H. Acts of God**

When Acts of God prevent an employee from performing the employee's duty, the Employer may authorize administrative leave. Equipment Maintenance Allowance will be paid for each service day a rural carrier reports to the post

**OLD FIELDS EMERGENCY PHYS, LLC**
PO BOX 37945
PHILADELPHIA, PA 19101-7945

TLH

Statement Date: July 18, 2016

| | |
|---|---|
| Account Number: | TLH010157959221 |
| Patient Name: | HALA M FARID |
| Access Code: | 1377-010157959221 |

**TAX ID # 46-3211972**

*Exhibit*

| | |
|---|---|
| Due Date: | PAST DUE |
| Amount You Owe: | $1,130.00 |

YOUR ACCOUNT IS NOW SERIOUSLY PAST DUE, AND A
DELINQUENCY REVIEW IS BEING CONDUCTED.

Pay Online
WWW.MYMEDICALPAYMENTS.COM
1-800-305-2475 MON-FRI 8:00AM - 4:30PM

201206-0010157959221-06
#BWNJFDG
#000000TLH46193244
HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

Services provided at:
CAPITAL REGIONAL MEDICAL CENTER - 2626 CAPITAL MEDICAL BLVD - TALLAHASSEE FL 32308-4402

1. WORKERS COMP CLAIM DENIED - NON-COVERED SERVICE

Insurance Information:
Insurance 1: USPS - WORKERS COMPENSATION

95213-R1-2X259

PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR REMITTANCE.
Pay Online
www.MyMedicalPayments.com

| | | | |
|---|---|---|---|
| | | Payment Due By: | PAST DUE |
| | | Amount Due: | $1,130.00 |
| | | Amount Enclosed: | |

| | |
|---|---|
| Statement Date: | 07/18/16 |
| Account Number: | TLH010157959221 |
| Patient Name: | HALA M FARID |

**Guarantor:**

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE, FL 32309

Make Check/Money Order payable to:

**OLD FIELDS EMERGENCY PHYS, LLC**    TLH
PO BOX 37945
PHILADELPHIA, PA 19101-7945

☐ If your address has changed, check this box,
and complete the reverse side of this form

2012080010157959221001130000000000000007

64

OLD FIELDS EMERGENCY PHYS, LLC
PO BOX 37945
PHILADELPHIA, PA 19101-7945

Statement Date: July 18, 2016

| | |
|---|---|
| Account Number: | TLH010157959221 |
| Patient Name: | HALA M FARID |
| Access Code: | 1377-010157959221 |

**Exhibit 15**

TAX ID # 46-3211972

| | |
|---|---|
| Due Date: | PAST DUE |
| Amount You Owe: | $1,130.00 |

201206-0010157959221-06
#BWNJFDB
#000000TLH48193264
HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

p 1 of 2

YOUR ACCOUNT IS NOW SERIOUSLY PAST DUE, AND A
DELINQUENCY REVIEW IS BEING CONDUCTED.

Pay Online:
WWW.MYMEDICALPAYMENTS.COM
1-800-288-3475 MON-FRI 8:30AM - 4:30PM

**Services provided at:**
CAPITAL REGIONAL MEDICAL CENTER - 2626 CAPITAL MEDICAL BLVD - TALLAHASSEE FL 32308-4402

1. WORKERS COMP CLAIM DENIED - NON-COVERED SERVICE

Insurance Information:
Insurance 1: USPS - WORKERS COMPENSATION

95213-R1-24239

**PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR REMITTANCE.**

Pay Online:
www.MyMedicalPayments.com

| | |
|---|---|
| Payment Due By: | PAST DUE |
| Amount Due: | $1,130.00 |
| Amount Enclosed: | |

| | |
|---|---|
| Statement Date: | 07/18/16 |
| Account Number: | TLH010157959221 |
| Patient Name: | HALA M FARID |

*Guarantor:*

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE, FL 32309

Make Check/Money Order payable to:

OLD FIELDS EMERGENCY PHYS, LLC   TLH
PO BOX 37945
PHILADELPHIA, PA 19101-7945

☐ If your address has changed, check this box.
and complete the reverse side of this form

2012080010157959221001130000000000000007

64

OLD FIELDS EMERGENCY PHYS, LLC
PO BOX 37945
PHILADELPHIA, PA 19101-7945

**TLH**   **STATEMENT OF ACCOUNT**
Statement Date: April 21, 2016

| Account Number: | TLH010156629330 |
| Patient Name: | HALA M FARID |
| Access Code: | 1377-010156629330 |

TAX ID # 46-3211972

*Exhibit 11*
*p. 2 of 2*

Due Date: 05/11/16

Amount You Owe: $758.00

201208-0010156629330-04
#BWNJFDB
#000000TLH4664811#
HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

PLEASE REMIT PAYMENT BY "PAYMENT DUE BY" DATE.
THANK YOU.

Pay Online
WWW.MYMEDICALPAYMENTS.COM
1-800-355-2470 MON-FRI 9:30AM - 4:00PM

### Services provided at:
**CAPITAL REGIONAL MEDICAL CENTER - 2626 CAPITAL MEDICAL BLVD - TALLAHASSEE FL 32308-4402**

| Date of Service | CPT Code | Description | Provider | Charges | Payments or Adjustments | Explanation | Amount You Owe |
|---|---|---|---|---|---|---|---|
| 02/15/2016 | 99283 | EMERGENCY DEPT VISIT LEVEL 3 | DR. CALABRO | $758.00 | $0.00 | 1 | $758.00 |
| 02/15/2016 | 94760 | NON-INVASIVE PULSE OXIMETRY | DR. CALABRO | $65.00 | $65.00 | 2 | $0.00 |

1. WORKERS COMP CLAIM DENIED - NON-COVERED SERVICE
2. WORKERS COMP CONTRACTUAL ALLOWANCE

| | |
|---|---|
| Total Charges | $823.00 |
| Current Patient Responsibility | $758.00 |

Insurance Information:
Insurance 1: US DEPT OF LABOR - US DEPT OF LABOR/ OWCP

---

91384-01-6518

**PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR REMITTANCE.**
Pay Online
www.MyMedicalPayments.com

Payment Due By: 05/11/16
Amount Due: $758.00
Amount Enclosed:

| Statement Date: | 04/21/16 |
| Account Number: | TLH010156629330 |
| Patient Name: | HALA M FARID |

PAY $758.00 BY DUE DATE

Guarantor:

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE, FL 32309

Make Check/Money Order payable to:

OLD FIELDS EMERGENCY PHYS, LLC
PO BOX 37945
PHILADELPHIA, PA 19101-7945      TLH

☐ If your address has changed, check this box.
   and complete the reverse side of this form

201208001015662933000075800000000000008



*Exhibit 12      p. 1 of 6*

*Sears Loan of $2500 (check of $2,350 + $117 fees.) on May 9 2016      See page 3*

☰ Menu

LAST VISIT: AUG 12, 2016 05:36 PM ET

## Statements

**Sears MasterCard®**
**Ending in 9687**

## Last Statement

**Statement Closing Date**
**AUG 5, 2016**

Statement Balance
$2,302.88

Statement Past Due Amount
$0.00

Next Statement Date
SEP 4, 2016

**Show Recent Activity**

## Recent Activity

**Activity Since**
**AUG 5, 2016**

Current Balance:
$2,302.88

Payments/Credits
$0.00

Purchases/Fees/Debits
$0.00

Available Credit:
$197.00

Available for Cash
$100.00

**Hide Recent Activity**

*72*

Hala M. Farid
4094 Forsythe Way
Tallahassee, FL 32309-2359

Check must post by ~ 2016
Date **6/8/2016**

66-156/531
54762-001

Pay To The
Order Of   **Hala Farid**                                    $ **2,425.00**

**Twenty four hundred & twenty-five dollars & 00/100 only** — Dollars

Capital One   Richmond, VA

Memo ⨯ ҡ ᵕ **6418**
Payable through Wells Fargo Bank, N.A.

Signature   _____

⑆499012⑆ ⑈053101561⑈ 75024745359172⑈

---

# sears.

## Sears MasterCard Credit Card Services

Hala M. Farid
4094 Forsythe Way
Tallahassee FL 32309-2359                    008111

Dear Hala M. Farid,

**Make sure you get the most out of your account.**
Now is a great time to use all the benefits of your Sears MasterCard® card. We've enclosed these checks that you can use immediately to help save on interest. They're just like ordinary checks except they access your Sears MasterCard® account.

**Use your checks for:**
- Balance transfers
- Bill consolidation
- Home improvements
- Large purchases
- Checking account deposits
- Or any way you want

**Your available credit limit can be used.**
You can use the checks up to your available credit limit, including the balance transfer fee. If your credit limit decreases, this will impact your ability to transfer a balance with this offer. If you transfer a balance with this offer, you may not be able to avoid interest on purchases. You can avoid interest on purchases if you pay your account balance, including any balances you transfer with this offer, in full by your due date each month. In order to qualify for this offer, these checks must post to your account by July 1, 2016.

Sincerely,

Kendall E. Stork
Citibank, N.A.

# Transfer your high-interest balances.

## You choose how you could save on interest.

This special offer ends July 1, 2016.

**Your Card Ending In: 9687**
**Cardmember Since: 2013**
**Credit Limit: $2,500**
**Available Credit: $2,500**
As of 04/13/16

Choose a **0.00%** Promotional APR on balance transfers until **August 1, 2017**.

—or—

Choose a **3.99%** Promotional APR on balance transfers until **May 1, 2018**.

After that, your variable regular purchase APR, currently **25.49%**, will apply. This APR will vary with the market based on the Prime Rate.

Two additional ways to transfer balances:
**Call 1-800-669-8488**
to use these checks by phone
**Visit balancetransfer.searscard.com**
to use these checks online

*acc. ending # 9834*



# **First National Bank**
## Omaha

Hala Farid
4094 Forsythe Way
Tallahassee FL  32309-2359

25/2/87
6393/43/2

*Exhibit 12*

# SAVE ON INTEREST WITH (THESE CHECKS)

- **0.00% APR\***
  until July 2017
  when you use these checks

- Then a variable **14.24%** APR
  based on the Prime Rate.

*P3 JC*

## Looking to reduce high-rate debt?

Just use these checks to help pay off your high-rate debt. Or use them with any merchant that takes checks.
They're a valuable interest-saving benefit for you as our Platinum Edition® Visa® Card cardmember.

| TRANSFER BALANCES | MAKE PURCHASES |
|---|---|
| • Help pay off high-rate credit cards | • Update your home |
| • Help pay down loan balances | • Make larger purchases like electronics |
| • Help eliminate balances on store brand cards | • Even cover emergency expenses like car repairs |

## These checks work just like traditional checks.

Each check comes with a low rate that's good until the close of your billing cycle ending in July 2017. To qualify for this offer and receive this Balance Transfer Special Offer Rate, transactions must post to your account on or before July 12, 2016 (the "Deadline").

▶ **Start saving on interest today! Just use these checks before July 12, 2016.**

We reserve the right to change your account terms for reasons described in your Cardmember Agreement. There is no grace period for these transactions.

## To transfer balances faster, just go online!

Simply log in to your account and enter special offer code RTN4811.

77

EXHIBIT

p. 4 of 6



**First** bank card

**ACCOUNT DETAIL: PLATINUM EDITION Visa XXXX-XXXX-XXXX-9834**

acc. ending #
9834

| | |
|---|---|
| Balance | $1,858.47 |
| Payment Due Date | 06/01/2016 |
| Minimum Payment Due | $0.00 |
| Balance Last Statement | $0.00 |
| Available Credit‡ | $691.53 |
| Total Credit Limit | $2,550.00 |

**Account Breakdown**

Data Represented is as of 05/31/2016



- ■ Retail/Department Stores - $1850.00
- ■ Professional Services - $35.00
- ■ Groceries - $34.61
-     Dining - $3.86

The chart is designed to help you budget expenses. Rewards are not calculated based on the categories above.

Show More Detail

**Account Tools:**

## TRANSACTIONS

Since Last Statement

Show Less Detail

| DATE | POST DATE | TRANSACTION DESCRIPTION | Category | AMOUNT |
|---|---|---|---|---|
| 05/08 | 05/09 | BALANCE TRANSFER - FNBO | ■ Retail/Department Stores | $295.00 |
| 05/08 | 05/09 | BAL TRAN FEE - 83 295.00 | ■ Retail/Department Stores | $10.00 |
| 05/11 | 05/12 | BALANCE TRANSFER - FNBO | ■ Retail/Department Stores | $1,500.00 |
| 05/11 | 05/12 | BAL TRAN FEE - 63 1500.00 | ■ Retail/Department Stores | $45.00 |
| | 05/12 | ONLINE PAYMENT THANK YOU | | -$50.00 |
| 05/12 | 05/13 | ULIASE AND ULIASE PC - HADDON HEIGHT, NJ | ■ Professional Services | $35.00 |
| | 05/16 | ONLINE PAYMENT THANK YOU | | -$15.00 |
| 05/18 | 05/19 | AUNTIE ANNE'S FL152 - TALLAHASSEE, FL | Dining | $3.86 |
| 05/25 | 05/27 | APNA BAZAR - TALLAHASSEE, FL | ■ Groceries | $34.61 |

} checks $295

} checks $1500

Balance transfers plus Transfer fees

‡At First Bankcard's discretion, availability of funds may be delayed to ensure any payment(s) received have cleared.

FICO is a registered trademark of Fair Isaac Corporation in the United States and other countries. First Bankcard and FICO are not credit repair organizations as defined under federal or state law, including the Credit Repair Organizations Act. First Bankcard and FICO do not provide "credit repair" services, advice or assistance regarding "rebuilding" or "improving" your credit record, credit history or credit rating.

Privacy Policy | Security Statement | Report Fraud | Online Agreement

Copyright © 2016 First Bankcard, a division of First National Bank of Omaha. All Rights Reserved.
1620 Dodge Street, Omaha, NE 68197

# envision
### c r e d i t   u n i o n

Exhibit 12

JULY
**13**

P. 5 D 6

**Envision ATIRAcredit™ Platinum Rewards MasterCard®**

## STATUS UPGRADE: "Elite Privileges"
## QUALIFICATION FOR LOWER APR

800 T6 P1

For: Hala Farid
4094 Forsythe Way
Tallahassee, FL 32309-2359

<table>
<tr><td colspan="2" align="center">**YOUR APPROVAL NUMBER:**<br>0516BT2658</td></tr>
<tr><td colspan="2" align="center">**CARD:**<br>Envision MasterCard</td></tr>
<tr><td colspan="2" align="center">**ACCOUNT #:**<br>xxxx xxxx xxxx 8413</td></tr>
<tr><td align="center">**CARDMEMBER SINCE:**<br>2014</td><td align="center">**LOYALTY GRADE:**<br>A++</td></tr>
</table>

---

Dear Hala Farid,

We're writing to you today with some EXCELLENT NEWS about your Platinum Rewards MasterCard! Take a minute now to read below (there's a deadline for action, so please don't miss out).

At our most recent review, records confirmed that you have clearly demonstrated outstanding financial responsibility with your Envision MasterCard. We took a closer look and noted that you've also been a loyal cardmember for 2 years now, since 2014.

Based on your qualifications, effective immediately **YOU ARE APPROVED** for **"ELITE PRIVILEGES"** that include a **LOWER APR** and more, as you'll read in the box on the back side of this letter..

We've authorized 3 "Elite Privileges Checks" – they're all **VALIDATED** and ready for you to use **TODAY!** Please make sure to use them while they are valid – BEFORE THE DEADLINE on 7/13/16. **Your Superior Level means that when you use these checks for balance transfers OR purchases, you get a LOWER, 8.99% APR that's LOCKED IN for 12 months, not just six or nine!** After that, the APR on these balances changes back to the 18.00% purchase variable APR you have now. (Of course you can pay off the balances on these checks anytime you like – there's NO "prepayment penalty".)

Your Superior Level also means that you have **NO Balance Transfer Fee.** (That's **not** what you find with many balance transfer offers if you read the fine print!)

Because of your status, **we've waived Balance Transfer Fees entirely, so you pay no fee, regardless of how large a check you write.**

# ELITE PRIVILEGES

## YOU'RE APPROVED

# 8.99%
### APR
### for

# 12
## MONTHS
### ON BALANCE
### TRANSFERS

# $0
## BALANCE
## TRANSFER
## FEE

Over, please

*See the back of this letter for terms and conditions. You will not be charged interest on purchases or balance transfers if you pay your entire balance by the due date each month. If you transfer a balance and do not pay the entire statement balance by the due date each month (including the promotional balance), you will lose your grace period on both balance transfers and any new purchases until you pay the entire balance in full. A loss of your grace period could result in additional interest charges.

79

*Envision*

*Loan of $4,000*

*$3,900 plus fees*

# FARID, HALA

Account # XXXX-8413

## Account Overview ❓

**Current Payment Due:**

**$0.00**

Payment Due
08/11/2016

MAKE PAYMENT

**Current Balance:**

**$3,822.00**

Available Credit:$178.00 of $4,000.00

RECENT ACTIVITY

**Last Statement Balance:**

**$3,900.00**

Last Statement Date
07/17/2016

VIEW STATEMENT

*Exhibit 12*

*p. 6 of 6*

## Recent Transactions

🖨 Print   ➕ View All Transactions (AccountTransactions.aspx?vw=all)

➕ **Pending Authorizations** ❓

*80*

Exhibit 13

p. 1 of 4

Page 1 of 4

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee    3.35

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $  0.75
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage    1.61
Total Postage and Fees    7.71

Sent To    USPS - Attn: Paula Napler
Street and Apt. No., or PO Box No.    3607 North Monroe Street
City, State, ZIP+4®    Tallahasse, FL 32303

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

...sults

FAQs  >  (http://faq.usps.com/?articleId=220900)

Another Package  +

Remove  ✕

**Tracking Number:** 70162140000097720530

▷     ▷     ▷   **Delivered**

## Product & Tracking Information

**See Available Actions**

Postal Product:          Features:
                         Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 3, 2017, 5:37 pm** | **Delivered, Front Desk/Reception** | **TALLAHASSEE, FL 32303** |

Your item was delivered to the front desk or reception area at 5:37 pm on August 3, 2017 in TALLAHASSEE, FL 32303.

| August 3, 2017, 1:01 am | Departed USPS Regional Facility | TALLAHASSEE FL DISTRIBUTION CENTER |
| August 2, 2017, 1:23 pm | Arrived at USPS Regional Facility | TALLAHASSEE FL DISTRIBUTION CENTER |

Exhibit 13

p. 2 of 4

# SUGHRUE LAW

### Helping Injured Federal Employees Since 2008

428 Forbes Avenue
Suite 2400
Pittsburgh, Pennsylvania 15219

Telephone —(412) 391-1629
Facsimile—(412) 391-1622
InjuredFederalEmployee.com

July 31, 2017

United States Postal Service
Attn: Paula Nupler
3607 North Monroe Street
Tallahasse, FL 32303

RE:   CA-1 Traumatic Injury Claim – Hala M. Farid

Dear Ms. Nupler:

Enclosed, please find the Form CA-1 Federal Employee's Notice of Traumatic Injury signed by my client, Hala M. Farid. The form is being filed because one or more of Ms. Farid's prior claims was filed incorrectly. We are working with Ms. Farid and the OWCP to ensure that her claim is properly filed and appropriately adjudicated. I ask that you, or an appropriate individual within your agency, complete page two - the Official Supervisor's Report – of the CA-1. Once completed, please immediately forward the CA-1 and Ms. Farid's statement and medical records attached therein to the Department of Labor, Office of Workers' Compensation Programs.

If you have any questions, please do not hesitate to contact this office.

Very truly yours,

Douglas Sughrue, Esq.
dsughrue@sughruelaw.com

Enclosures

cc:    Ms. Farid w/out Encl.

DS/caf

Exhibit 13

p. 3 of 4

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| Certified Mail Fee | 3.35 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☑ Return Receipt (hardcopy) | $ 2.75 | |
| ☐ Return Receipt (electronic) | $ | Postmark |
| ☐ Certified Mail Restricted Delivery | $ | Here |
| ☐ Adult Signature Required | $ | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | 0.94 | |
| Total Postage and Fees | $ 6.98 | |

Sent To USPS Vanessa Cobb c/o Edward Miller Postmaster

Street and Apt. No., or PO Box No. 2800 S. Adams Street

City, State, ZIP+4® Tallahassee FL 32301-9998

7016 2140 0000 9772 0592

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

---

| **SENDER: COMPLETE THIS SECTION** | **COMPLETE THIS SECTION ON DELIVERY** |
|---|---|
| ■ Complete items 1, 2, and 3. | A. Signature |
| ■ Print your name and address on the reverse so that we can return the card to you. | X Vanessa Cobb    ☐ Agent ☐ Addressee |
| ■ Attach this card to the back of the mailpiece, or on the front if space permits. | B. Received by (Printed Name)   C. Date of Delivery |
| 1. Article Addressed to: | Vanessa Cobb   MAY 1 7 |
| United States Postal Service | D. Is delivery address different from item 1?  ☐ Yes |
| Vanessa Cobb, Acting Postmaster | If YES, enter delivery address below:   ☐ No |
| c/o Postmaster, Edward L. Miller | |
| 2800 S. Adams St. | |
| Tallahassee, FL 32301-9998 | |
| | 3. Service Type |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ | ☐ Adult Signature   ☐ Priority Mail Express® |
| 9590 9402 2250 6225 2329 24 | ☐ Adult Signature Restricted Delivery  ☐ Registered Mail™ |
| | ☑ Certified Mail®   ☐ Registered Mail Restricted Delivery |
| 2. Article Number (Transfer from service label) | ☐ Certified Mail Restricted Delivery  ☐ Return Receipt for Merchandise |
| 7016 2140 0000 9772 0592 | ☐ Collect on Delivery   ☐ Signature Confirmation™ |
| | ☐ Collect on Delivery Restricted Delivery  ☐ Signature Confirmation Restricted Delivery |
| | ☐ Insured Mail |
| | ☐ Insured Mail Restricted Delivery (over $500) |

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

Exhibit 13

p. 4 of 4

# SUGHRUE LAW

Helping Injured Federal Employees Since 2008

428 Forbes Avenue
Suite 2400
Pittsburgh, Pennsylvania 15219.

Telephone —(412) 391-1629
Facsimile—(412) 391-1622
InjuredFederalEmployee.com

October 24, 2017

United States Postal Service
Vanessa Cobb, Acting Postmaster
c/o Postmaster, Edward L. Miller
2800 S. Adams St.
Tallahassee, FL 32301-9998

RE:    CA-1 Traumatic Injury Claim – Hala M. Farid

Dear Ms. Cobb:

Enclosed, please find the Form CA-1 Federal Employee's Notice of Traumatic Injury signed by my client, Hala M. Farid. The enclosed form is being filed because one or more of Ms. Farid's prior claims was filed incorrectly. We are working with Ms. Farid and the OWCP to ensure that her claim is properly filed and appropriately adjudicated. I ask that you, or an appropriate individual within your agency, complete page two - the Official Supervisor's Report – of the CA-1. Once completed, please immediately forward the CA-1 and Ms. Farid's statement and medical records attached therein to the Department of Labor, Office of Workers' Compensation Programs.

If you have any questions, please do not hesitate to contact this office.

Very truly yours,

Douglas Sughrue, Esq.
dsughrue@sughruelaw.com

Enclosures
cc:     Ms. Farid w/out Encl.
DS/caf

Medical report attached

From:  Hala Farid (hala_farid13@yahoo.com)

To:     paul.d.jones@usps.gov; hala_farid13@yahoo.com

Date:  Tuesday, April 4, 2017, 1:07 PM EDT


Hello Paul,

Your fax machine is not accepting, please check it.

I'm **attaching the requested medical documents**. I'm also attaching the fax results, that show that
your fax machine is not accepting any faxes.

Thank you,
Hala Farid

 Medical reports sent to employer on 4:4:17.pdf
2.2MB


*Exhibit 14*

# Duty Status Report

**U.S. Department of Labor**
Office of Workers' Compensation Programs



This form is provided for the purpose of obtaining a duty status report for the employee named below. This request does not constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any previous authorization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.) and is required to obtain or retain a benefit. Information collected will be handled and stored in compliance with the Freedom of Information Act, the Privacy Act of 1974 and the OMB Cir. A-130. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

OMB No. 1240-0046
Expires: 01-31-2018

OWCP File Number
(If known)
062361059

**SIDE A - Supervisor: Complete this side and refer to physician**

1. Employee's Name (Last, first, middle)
FARID, HALA

2. Date of Injury (Month, day, yr.)
09/05/2015

3. Social Security Number

4. Occupation  Mail Person

5. Describe How the Injury Occurred and State Parts of the Body Affected

6. The Employee Works
Hours Per Day          Days Per Week

7. Specify the Usual Work Requirements of the Employee. Check Whether Employee Performs These Tasks or is Exposed Continuously or Intermittently, and Give Number of Hours.

**SIDE B - Physician: Complete this side**

8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5? ☐ Yes ☐ No (If not, describe)

9. Description of Clinical Findings
Multilevel DDD

10. Diagnosis(es) Due to Injury
Multilevel DDD

11. Other Disabling Conditions

12. Employee Advised to Resume Work?
☐ Yes, Date Advised          ☐ No

13. Employee Able to Perform Regular Work Described on Side A?
☐ Yes, if so  ☐ Full-Time or  ☐ Part-Time          ____ Hrs Per Day
☐ No, if not, complete below:

| Activity | Continuous #lbs. | Intermittent #lbs. | Hrs Per Day | Continuous #lbs. | Intermittent #lbs. | Hrs Per Day |
|---|---|---|---|---|---|---|
| a. Lifting/Carrying: State Max Wt. | | | | | | |
| b. Sitting | ☐ | ☐ | Hrs Per Day | ☐ Alternate | ☐ | Hrs Per Day |
| c. Standing | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| d. Walking | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| e. Climbing | ☐ | ☐ | Hrs Per Day | flight of stairs | ☐ | Hrs Per Day |
| f. Kneeling | ☐ | ☐ | Hrs Per Day | ☐ no | ☐ | Hrs Per Day |
| g. Bending/Stooping | ☐ | ☐ | Hrs Per Day | ☐ no | ☐ | Hrs Per Day |
| h. Twisting | ☐ | ☐ | Hrs Per Day | ☐ 15lb | ☐ | Hrs Per Day |
| i. Pulling/Pushing | ☐ | ☐ | Hrs Per Day | | ☐ | Hrs Per Day |
| j. Simple Grasping | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| k. Fine Manipulation (includes keyboarding) | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| l. Reaching above Shoulder | ☑ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| m. Driving a Vehicle (Specify) | ☐ | ☐ | Hrs Per Day | ☐ Alternate | ☐ | Hrs Per Day |
| n. Operating Machinery (Specify) | ☐ | ☐ | Hrs Per Day | ok | | Hrs Per Day |
| o. Temp. Extremes | ☐ | ☐ | range in degrees F | | ☐ | range in degrees F |
| p. High Humidity | ☐ | ☐ | Hrs Per Day | ☐ per work duties | ☐ | Hrs Per Day |
| q. Chemicals, Solvents, etc. (Identify) | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| r. Fumes/Dust (Identify) | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| s. Noise (Give dBA) | ☐ | ☐ | dBA Hrs Per Day | ☐ | ☐ | dBA Hrs Per Day |

t. Other (Describe)

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition? (e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.)
☐ Yes ☑ No (Describe)

15. Date of Examination 04/12/2016   16. Date of Next Appointment

17. Specialty
PAIN MANAGEMENT

18. Tax Identification Number

19. Physician's Signature          20. Date 04/12/2016   CA-17 (Rev. 08-14)

If you have a disability (a substantially limiting physical or mental impairment), contact OWCP for information on communication assistance (alternate formats or sign language interpretation), accommodations and/or modifications. See instructions for Disability-Related Assistance under Federal disability nondiscrimination law.

00332

168

**Exhibit 16**

On 04-29-16 I witnessed
Oneal Gaiuter and Shalonda foster
talking to Ms Farid in a overly
deamining tone, bulling her by telling
her she had to do her regular job.
That they would not reconize her
SA-17 that had her on restrictrons,
I told Ms Farid don't let them
hurt you, because they was bulling
her so bad. When I passed by
Ms Farid case later she was
sitting on her stool in terrible pain. She
had Called 911. as the paremedics wheeled
Ms Farid thrugh the Post Office by the
Supervisor desk Shalonda foster laughed
at Ms Farid while she was being
rolled out to the ambulance

Jesse Bagel

151

Exhibit 17

**Comparison:**

20 × $4.25 = $85.00

3 trips × $14.60 = $43.80

The lesser amount ($43.80) is compared with calculated miles:

90 miles × $ 0.365 = $32.85

The greater amount ($43.80) is due the employee for each week.

# 580   Leave/Other

### 581   Overview

Regular rural carriers and carriers assigned to a regular route via PS Forms 50 (Designations 72, 74) are granted leave in minimum units of 1 day. Leave must be documented on PS Form 3971, *Request for or Notification of Absence,* as outlined in section 323.

*Exception:* Continuation of pay (COP) leave hours are used in conjunction with limited duty work. These COP hours must be recorded in whole hour increments. Auxiliary carriers and part-time flexible rural carriers are granted leave in whole hour increments.

### 581.1   Regular Rural Carriers

### 581.11   Annual Leave

A newly appointed regular rural carrier may not use annual leave until the completion of 90 days (7 pay periods) of continuous employment. Conversion to regular rural carrier from a Designation 72 or 76 position does not require a 90-day qualifying period. Rural carrier associates (Designation 78) have a 90-day qualifying period for leave.



### 581.12   Sick Leave

Sick leave is credited at the end of each 2-week pay period in which it is earned. When the sick leave recorded is greater than the employee's sick leave balance, the office may contact the employee about the insufficient leave balance to determine what type of leave to charge.  (see exhibits 581.12).

EXhibit 18

c. Preparation of PS Form 1314-A for Designation 79. Leave the DACA field blank on PS Form 1314-A. If the employee is not entitled to EMA, put 1 trip in the government vehicle block.

d. Preparation of PS Form 1314-A for Designations 70, 73, 75, 77, and 78. Complete a manually prepared or preprinted PS Form 1314-A using route number A999. Enter 2 hours in the Actual Weekly Work Hours block.

582.234 **Situation 4**

If the rural carriers scheduled for duty report to the Postal Service installation but are unable to complete full service through no fault of their own, they receive compensation according to their designation.

a. Designations 71, 72, 74 and 79 receive a full day's compensation and EMA.

b. Designations 70, 73, 75, and 78, when performing service on a regular rural route, receive a full day's compensation plus EMA.

c. Designations 70, 75, 77, and 78, when performing service on an auxiliary rural route, receive compensation for actual hours and hundredths worked (minimum 2 hours). EMA is only for route hours, trips, and miles traveled.

583 # Continuation of Pay

Rural carriers who suffer disabling, job-related, traumatic injuries are entitled to continuation of pay (COP) for the length of their disability, up to a maximum of 45 calendar days.

583.1 ## Determination of Pay

For a full or part-time worker, either permanent or temporary, who works the same number of hours each week of the year, or each week of the period of appointment if less than one year, the weekly pay rate shall be the hourly pay rate on the date of injury multiplied by the number of hours worked each week, excluding overtime.

For a part-time worker, either permanent or temporary, who does not work the same number of hours each week but who does work each week of the year, or each week of the period of appointment if less than one year, the weekly pay rate shall be the average weekly earnings established by dividing the total earnings during the one year immediately preceding the date of injury, excluding overtime, by the number of weeks worked during the one year period. For the purposes of this computation, if the employee worked only a part of a workweek, such week is counted as one week.

For all WAE (when actually employed), intermittent and part-time workers, either permanent or temporary, who do not work each week of the year, or each week of the period of appointment if less than one year, the weekly pay rate shall be the average weekly earnings established by dividing the total earnings during the one year immediately preceding the date of injury, excluding overtime, by the number of weeks worked during that one year period. For the purposes of this computation, if the employee worked only a

854071

**UNITED STATES POSTAL SERVICE**

Exhibit 19

## Statement

p. 1 of 2

Page 1   of 1

USPS DISBURSING OFFICE
ACCOUNTING SERVICE CENTER
2825 LONE OAK PKWY
EAGAN MN  55121-9640

STATEMENT DATE: 22-JAN-2018
CUSTOMER NUMBER: 03600357
   TOTAL DUE:  $        689.39

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

**Questions or correspondence:**
YOUR EMPLOYING OFFICE MAY CONTACT US AT
651 681-1404 IF ADDITIONAL ASSISTANCE IS
NEEDED.
MAKE CHECK PAYABLE TO: US POSTAL SERVICE

Please direct any questions to your employing office.

| TRANSACTION NUMBER | DATE | TRANSACTION TYPE | DUE DATE | REFERENCE | TRANSACTION AMOUNT | AMOUNT DUE |
|---|---|---|---|---|---|---|
| 702711318 | 09-MAR-16 | Invoice | 08-APR-16 | J04660 PRD | 1,478.58 | |
| 702711318 | 07-DEC-16 | Adjustment | | MN-GRIEVANCE: | (598.77) | |
| 702711318 | 03-JUL-17 | Payment | | 1086 | (25.00) | |
| 702711318 | 24-JUL-17 | Payment | | P60330201712 | (99.85) | |
| 702711318 | 24-JUL-17 | Payment | | P60330201711 | (51.67) | |
| 702711318 | 24-JUL-17 | Payment | | P60330201702 | (3.90) | |
| 702711318 | 27-NOV-17 | Payment | | 1092 | (10.00) | 689.39 |

| Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | FINANCE CHARGES | TOTAL DUE |
|---|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 689.39 | 0.00 $ | 689.39 |

PS Form AS - May 01, 2002

----- To ensure proper credit to your account,  Please return bottom portion with your remittance -----

**UNITED STATES POSTAL SERVICE**

ATTN: FINANCIAL PROCESSING
ACCOUNTING SERVICE CENTER
2825 LONE OAK PKWY
EAGAN MN  55121-9616

STATEMENT DATE: 22-JAN-2018
CUSTOMER NUMBER: 03600357
   TOTAL DUE:  $        689.39

   AMOUNT PAID:  $ _____.____

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

**MAIL TO:**

USPS DISBURSING OFFICE
ACCOUNTING SERVICE CENTER
2825 LONE OAK PKWY
EAGAN MN  55121-9640

☐ Check here to change address, complete new address on reverse.
   Write your customer number on your check or money order. Do not send cash.

0103600357                    X000000000000068939X

*Exhibit 19*

854071

**UNITED STATES**
**POSTAL SERVICE**

*I need an explanation of the debt*

Page 2 of 2

*I shouldn't have any debt!*

NOTICE OF INTENTION TO COLLECT A DEBT BY ADMINISTRATIVE OFFSET

REF: Amount of past due debt owed to the U.S. Postal Service: $689.39   Account/TIN: 03600357

As reflected in previous correspondence, you have one or more outstanding debts to the Postal Service amounting to $689.39. The Postal Service intends to collect your outstanding debt through referral to the U.S. Treasury - Debt Management Services (DMS) for collection by administrative offset from any available funds.

PLEASE READ THE FOLLOWING INSTRUCTIONS CAREFULLY TO DETERMINE WHAT ACTION YOU MAY TAKE TO AVOID REFERRAL.

REPAY YOUR DEBT: If you acknowledge the validity of the Postal Service's claim and wish to repay the entire debt, submit a check or money order, payable to the U.S. Postal Service with your customer number on the memo line, for the full amount due to:

Disbursing Office - Eagan Accounting Services
2825 Lone Oak Parkway
Eagan MN 55121-9640

Note: We will also accept a credit card payment for the full amount of the debt if you contact us at the phone number on the enclosed statement.

AGREE TO A REPAYMENT PLAN: Contact us, agree to a repayment plan acceptable to the Postal Service, and make agreed upon payments.

In addition, provisions of the Debt Collection Act, 31 U.S.C. § 3716 provide you with the opportunity to exercise certain rights before the Postal Service may refer this debt for collection by administrative offset.

REQUEST FOR RECORDS: You may request a copy of records related to this debt by contacting us at the address on the enclosed statement.

REQUEST A REVIEW IF YOU BELIEVE THE DEBT IS NOT OWED: If you feel the existence or amount of this debt is incorrect, you may request a review of the Postal Service's determination of your indebtedness. You may do so pursuant to the procedures in 39 CFR Part 966. To begin this process, you must request reconsideration of the existence or amount of your debt from the Postal Service Accounting Service Center. You or your representative may do so by sending your request, in writing, to the below address. You must send your request within 30 days of the date you receive this notice. In addition, if you were a bargaining unit employee covered by the National Agreement between the Postal Service and the American Postal Workers Union, AFL-CIO, at the time the debt was incurred, then you may have the right to file a grievance concerning the existence or amount of your debt pursuant to Article 15, Section 7 of the Collective Bargaining Agreement.

If you have filed a timely request for reconsideration, grievance, or judicial hearing, and Eagan Accounting Services has received such notification, the collection of the applicable debt will be stayed pending resolution. To ensure our system accurately reflects this disputed status, you may contact our office. Upon disposition, any applicable collection efforts will be enforced.

BANKRUPTCY: If you have filed for bankruptcy and the automatic bankruptcy stay is in effect, you are not subject to offset while the stay is in effect. Please notify us by sending evidence concerning the bankruptcy.

Please understand that making or providing any false or frivolous statements, representation or evidence, may subject you to penalties under the False Claims Act (31 U.S.C. 3729-3731), or other applicable statutes, and/or criminal penalties.

Please note that the Postal Service is not required to duplicate administrative review rights prior to collecting your debt by administrative offset. If you have already exercised your review rights as to this debt, then your request for review and/or grievance may be denied or dismissed.

If you choose not to exercise the above rights and/or do not voluntarily repay this debt within 30 days of your receipt of this notice, then the Postal Service will collect your outstanding debt by referral to DMS no earlier than 60 days following your receipt of this notice.

When the Postal Service takes this action, you will be contacted by DMS, and may be subject to additional fees and charges; have your debt reported to a credit bureau(s); and, if your debt is discharged, have it reported to the IRS as potential taxable income. If your account is not resolved through DMS, it may be forwarded by them to both a private collection agency and the Treasury Offset Program (TOP), as applicable. If sent to TOP, Treasury will reduce or withhold any of your eligible Federal and State payments by the amount of your debt. The Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996 authorize this process, known as "offset". Treasury is not required to send you a notice before your payment is offset. If any excess collections exist, the money will be refunded to you unless prohibited by law.
Payments eligible for offset include:
* Your income tax refunds;
* Your Federal salary pay, including military pay;
* Your Federal retirement, including military retirement pay;
* Your contractor/vendor payments;
* All other Federal and State payments not exempt from offset
Please note: If you file a joint income tax return, you should contact the Internal Revenue Service before filing your return regarding the steps to take to protect the share of the income tax refund which may be payable to your spouse, who is not a delinquent debtor to the United States.

Note: The full text of 39 CFR Part 966 is available on-line: http://about.usps.com/who-we-are/judicial/rules/rule966.htm. If you do not have access to the internet, please contact our office to request a printed copy.

If you have questions please refer to the contact information under 'Question or Correspondence' on the enclosed statement.

Accounting Services

ACCOUNTING SERVICE CENTER
2825 Lone Oak Pkwy
Eagan, MN.  55121-9635

*Exhibit 20*          *p. 1 of 2*


UNITED STATES
POSTAL SERVICE

03/21/2018

Re:  Invoice #702711318

Dear Hala,

   Reviewing your  Account Details indicate that the debt has been satisfied  and the balance due is in fact zero(0).
 You may disregard the notice of intention to collect,enclosed is a print of your account detail showing  the zero balance due.

If there are further questions , please contact the Accounting Help Desk @866-974-2733

Thank You,


Warren H Monheim
Accounting Technician
Rural Payroll
Eagan IT/ASC 9635
Fax 651-406-1218

*Exhibit 20*   *p. 2 of 2*

Customer # / Payroll 1

| Number | PO Number | Transaction Date | Class | Original Amount | Balance Due Amount | Adjusted Due Date | Transaction Type | Amount Applied | Dispute Amount |
|---|---|---|---|---|---|---|---|---|---|
| 7002113161 | J01600 PRD | 09-MAR-2016 | Invoice | | 0.00 | | PAYROLL/APS | $79.81 | |
| 7022565612 | Jun120 PRD | 20-JUN-2012 | Invoice | 1,478.59 | 0.00 | (398.77) 05-APR-2016 | PAYROLL/APS | | |
| 7027260072 | M57110 PRD | 04-MAY-2016 | Invoice | 2,169.47 | 0.00 | (1,084.73) 20-JUL-2012 | PAYROLL/APS | 1,084.74 | |
| 7020662221 | M50480 PRD | 19-APR-2017 | Invoice | 11.31 | 0.00 | 0.00 03-JUN-2016 | HB | 11.31 | |
| 7028194131 | M50380 PRD | 14-JUN-2017 | Credit | 317.75 | 0.00 | 19-MAY-2017 | HD | (317.75) | |
| 7027763655 | P60330 PRD | 02-NOV-2016 | Invoice | (317.75) | 0.00 | 14-JUN-2017 | CH-PAYROLL/AF | | |
| 7020101103 | P60031 PRD | 14-JUN-2017 | Cred | (264.05) | 0.00 | 0.00 02-DEC-2016 | HB | 0.00 | |
| | | | | | | 14-JUN-2017 | CH-PAYROLL/AF | (264.05) | |

|  | Entered | Functional |
|---|---|---|
| Cumulative Balance | 0.00 | 0.00 |
| Total Balance | | |

Balances

Details

*3-21-2018*

ACCOUNTING SERVICES

*Exhibit 21*


**UNITED STATES**
**POSTAL SERVICE**

June 19, 2017

HALA FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

Customer Number:  03600357

The United States Postal Service is holding funds which may be applied to your outstanding debt.  These funds of $155.42 represent payments made on invoice(s) which were subsequently cancelled and/or amended.  We will apply these funds to your debt no earlier than 30 days from the date of this notice or upon your notification to the U S Postal Service.

| INVOICE NUMBER | DESCRIPTION | AMOUNT |
|---|---|---|
| 702711318 | OVERPAID COP, CHG'D TO IOD LWOP | $879.81 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | TOTAL | $879.81 |

Any concerns regarding this letter should be addressed to:

Accounts Receivable
Eagan Accounting Services
2825 Lone Oak Parkway
Eagan MN  55121-9616
651-681-1404
BWNKC0@USPS.GOV

Sincerely,

Finance Branch
Eagan Accounting Service Center

July 15th 2016

Paula Nahpur,
Station Manager of Lake Jackson
3607 N. Monroe St.
Tallahassee, FL 32303
Fax # 850 562- 0567

RE: **REQUESTING REASONABLE ACCOMODATION**

Dear Paula Nahpur:

Due to my temporary medical restrictions of the attached CA-17 from Dr. Richard Blecha

07/15/2016, I, Hala Farid (Regular Carrier of RR62), am requesting to reasonably ac-

commodate me by placing me in a light duty job offer, that does not aggravate my med-

ical limitations of **NO TWISTING, NO BENDING, NO KNEELING, NO CLIMB-**

**ING, NO PULING/PUSHING MORE THAN 25 IBS, NO LIFTING MORE THAN**

**5 to 10lbs ( AND SITTING, WALKING AND STANDING ALTERNATE AT 30**

**MINUTES). DATE OF EXAMINATION IS ON 7/15/2016.** Per my doctor's order, I

cannot resume my regular normal duties of carrying my route, as delivery tasks require

repetitive twisting, as I usually serve approximately 560 customers. Please respond to this

request in writing within three days.

Yours truly ,

HALA M. FARID
4094 Forsythe Way
Tallahassee, FL 32309    phone # 850 445-9199
c.c./ HRM-Department of Labor

Exhibit 22
p. 1 of 2

1

Exhibit 22          p 2 of 2

May 18th 2016

Paula Nahpur,

Station Manager of Lake Jackson

3607 N. Monroe St.

Tallahassee, FL 32303

Fax # 850 562- 0567

RE: **REQUESTING REASONABLE ACCOMODATION**

Dear Paula Nahpur:

Due to my temporary medical restrictions of the attached order from Dr. Ann Marie Carr of 05/18/2016, I, Hala Farid (Regular Carrier of RR62), am requesting to reasonably accommodate me by placing me in a light duty job offer, that does not aggravate my medical limitations of **NO TWISTING, NO LIFTING MORE THAN 15lbs**, until MRI is completed. Per my doctor's order, I cannot resume my regular normal duties of carrying my route, as delivery tasks require repetitive twisting, as I usually serve approximately 560 customers. Please respond to this request in writing within three days.

Yours truly ,

_____

HALA M. FARID

4094 Forsythe Way

Tallahassee, FL 32309     phone # 850 445-9199

c.c./ HRM-Department of Labor

1

121

Exhibit 23

6. Identify any critical element(s) of the position which employee does not perform successfully or at all. Explain the deficiencies you observed. Attach supporting documentation such as notice to the employee that performance is less than fully successful or physician's recommendation regarding medical restrictions.

unknown   have never supervised employee

## Section C - Information About Employee's Attendance

1. Has employee stopped coming to work?

[ ] No    [X] Yes, how long is absence expected to continue (if known)?

2. Is employee's attendance unacceptable for continuing in current position?

[ ] No    [X] Yes, attendance stopped or became unacceptable on (mo./yr.):

3. Explain the impact of employee's absence on your work operations.

an RCA has to Run her Rt instead of being able to help
with other Rortes

| 4. How many hours of leave has employee used for apparent medical reasons since date in item C2? (Attach copies of medical information on which you based your decision to approve leave, leave records, records of contact with or notices to employee. Include as much information as possible about specific reasons for leave use.) | Enter Leave Hours Used | Annual | Sick | LWOP |
|---|---|---|---|---|
| | | 104 | 8 | unknown |

## Section D - Information About Employee's Conduct

1. Is employee's conduct unsatisfactory?

[X] No, go to Section E.    [ ] Yes, conduct became unsatisfactory on (mo./yr.):

2. Describe how conduct is unsatisfactory (attach supporting documentation, such as notice to employee of proposed adverse action).

## Section E - Accommodation and Reassignment
### (Consult with agency Coordinator for Employment of the Handicapped)

1. What efforts have been made to accommodate the employee in current position?

none - we can not accommodate the employee

2. Has employee been reassigned to a new permanent position? (If yes, to what position and when?)

[X] No    [ ] Yes, to _____ on (mo./yr.):

3. Has employee been reassigned to "light duty" or a temporary position?

[X] No, go to Section F.    [ ] Yes

4. Describe the reason for temporary nature of assignment and length of time the employee is expected to occupy the position.

## Section F - Supervisor's Certification

1. How long have you supervised the employee?

I have been her since April 22 2014 the employee

2. I certify that all statements made on this Supervisor's Statement are true to the best of my knowledge and belief.

2a. Supervisor's signature: Paula Nahrp

2c. Date (mo./day/yr.): 9/21/14

2b. Supervisor's name (type or print legibly): Paula Nahrp

2d. Supervisor's office mailing address: 3607 N. Monroe Tallahassee FL. 32303

2e. Supervisor's daytime telephone number (including area code): 1-850-562-6196

Standard Form 3112B
December 1995

Exhibit 24

| 01 | Effective Date 11-25-2017 | | Notification of Personnel Action UNITED STATES POSTAL SERVICE® | 02 | Social Security Number 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 |
|---|---|---|---|---|---|

**EMPLOYEE INFORMATION**  U. S. Postal Service

| | | | | | |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | FARID | 38 | Probation Expir Date | |
| 04 | Employee Name-First | HALA | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | M | 40 | Pay Location | 000 |
| 06 | Mailing Address Street/Box/Apts | 4094 FORSYTHE WAY | 41 | Rural Carrier-Route | 00981 |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | TALLAHASSEE | 43 | Rural Carr-Pay Type | K - 5 DAY HEAVY ROUTE |
| 08 | Mailing Address-State | FL | 45 | Rural Carr-FLSA | B |
| 09 | Mailing Address-Zip+4 | 32309-0000 | 46 | Rural Carr-Commit | Y |
| 10 | Date of Birth | 02-27-1962 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | 45 |
| 12 | Sex | | 49 | Rural Carr-Miles | 53 |
| 13 | Ethnicity–Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2325-01XX |
| 15 | Leave Comp Date | 04-05-2014 | 52 | Position title | RURAL CARRIER |
| 16 | Enter on Duty Date | 07-23-2005 | 53 | Labor Dist Code | 6700 |
| 17 | Retirement Comp Date | 04-05-2014 | 54 | Designation/Activity | 71/0 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | 04-05-2014 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | | **SALARY INFORMATION** | |
| 23 | Leave Data Category | 6.00 - HOURS/PP | 59 | Pay Rate Code | P |
| 24 | Leave Data-Chg PPYR | 09 2029 | 60 | Rate Schedule Code | R - RURAL |
| 25 | Leave Data-Type | 1 - ADVANCE AL - EARN SL | 61 | Grade/Step | 00/ B |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 59051.00 |
| 27 | reserved for future use | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | E - FERS-FRAE | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | ID - LWOP/IOD - FON 6700 | 65 | Next Step PPYR | 26 2017 |
| 30 | Life Insurance | A1 - FEGLI Coverage Ended | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| **POSITION INFORMATION** | | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 11-8893 | 69 | Protected RSC | |
| 33 | Employ Office-Name | TLH-LAKE JACKSON STA | 70 | Protected Grade/Step | / |
| 34 | Employ Office-Address | MANAGER TLH-LAKE JACKSON STA 3607 N MONROE ST | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | 0 |
| 35 | Duty Station-Fin No | 11-8893 | 73 | Protected RC Miles | 0 |
| 36 | Duty Station-Name | TLH-LAKE JACKSON STA | 74 | RC Guaranteed Salary | 0.00 |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |
| **NATURE OF PERSONNEL ACTION** | | | | | |
| 77 | Nature of Action Code | 721 | 78 | Authority | 39-USC Sect 1001 |
| 79 | Description | REASSIGNMENT | | | |
| 80 | Code | | 81 | Code | | 82 | Code | | 83 | Code | |
| 84 | Remarks | | | | |

PERSON ID:03600357 PERS ASSGN:05053920
REASSIGNED INTO PHANTOM ROUTE 981 POSITION 71927024.  HRSSC/JW PPS 12/01/17

 Phantom Route

Effective date 11/25/2017

| 85 | Authorization MANAGER, HUMAN RESOURCES   SHARED SERVICE CENTER | 86 | Processed Date | 11-30-2017 |
|---|---|---|---|---|
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

Exhibit 25

### 554.5 Vacant Mileage Routes

All vacant mileage routes are posted and awarded on the basis of evaluated time.

### 554.6 Vacant Evaluated Routes

All evaluated routes are posted at the option the route was when it was vacated. If the route was posted at high option, the newly assigned carrier must meet the criteria set in section 554.1.

### 554.7 New Route

All new routes are posted as low option and awarded on the basis of evaluated time.

## 555 Phantom Routes

### 555.1 Establishment

*two years*

Phantom routes are created to hold a regular carrier on a route but no payment is made to the carrier. When the regular rural carrier is unable to perform all the duties of her or his assigned rural route for a period of 2 years as a result of a job-related illness or injury, the employee must relinquish the route and such route will be posted for bid. The bid is in accordance with Article 12, Section 3, of the National Agreement Between the USPS and the NRLCA.

### 555.2 Routes 980–989

Effective PP 20-93, September 18, 1993, rural routes 980–989 may be created for the assignment of regular rural carriers who have relinquished their routes and continue to be in an injured on duty/leave without pay (IOD/LWOP) status. An office may establish a maximum of 10 rural routes. The rural route master (AAQ300) will display this route, but summary totals do not include any route data. Do not place any employee on a phantom route that is working on limited duty or is working in any capacity and being paid from PS Form 1314.

### 555.3 PS Form 4003, *Official Rural Route Description*

To create this route, submit PS Form 4003, *Official Rural Route Description*, for processing. Enter X for the new route and the route data at the time when the employee was injured. Do not enter the current data. Information on PS Form 4003 should contain the route number (starting with 980 for the first route in the office), route length, regular and/or centralized boxes, stops, base hours, high or low option, if applicable, and vehicle data.

### 555.4 PS Form 1314, *Regular Rural Carrier Time Certificate*

After creating the route, process SF 50 to transfer the IOD/LWOP carrier to this route. The Eagan Integrated Business Systems Solutions Center (IBSSC) will issue PS Form 1314 under the new route number. Offices must

**UNITED STATES**
**POSTAL SERVICE**

Page 1 of 2

Exhibit 26
p. 1 of 2

February 20, 2018

USPS DISBURSING OFFICE
ACCOUNTING SERVICE CENTER
2825 LONE OAK PKWY
EAGAN MN 55121-9640

**Question or Correspondence:**
SEE ENCLOSED NOTICE
Phone: 651 681-1404 EMAIL BWNKC0@USPS.GOV

HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

| INVOICE | REFERENCE | INVOICE DATE | DAYS LATE | ORIGINAL AMOUNT | FINANCE CHARGE | PMT/ ADJ | BALANCE DUE |
|---------|-----------|--------------|-----------|-----------------|----------------|----------|-------------|
| 702711318 | J04660 PRD | 09-MAR-2016 | 683 | $1,478.58 | $0.00 | $-789.19 | $689.39 |
| | | | | | TOTAL PAST DUE: | | $689.39 |

---To ensure proper credit to your account, please return bottom portion with your remittance----

**UNITED STATES**
**POSTAL SERVICE**

ATTN: DUNNING SECTION
ACCOUNTING SERVICES CENTER
2825 LONE OAK PKWY
EAGAN MN  55121-9616

| | |
|---|---|
| CUSTOMER NUMBER : | 03600357 |
| LETTER DATE : | February 20, 2018 |
| TOTAL PAST DUE : | $689.39 |

AMOUNT PAID : _____

**MAKE CHECK PAYABLE TO:** US POSTAL SERVICE



HALA M FARID
4094 FORSYTHE WAY
TALLAHASSEE FL 32309-2359

**MAIL TO:**

USPS DISBURSING OFFICE
ACCOUNTING SERVICE CENTER
2825 LONE OAK PKWY
EAGAN MN 55121-9640

☐ Check here to change address, complete new address on reverse.
Write you customer number on your check or money order. Do not send cash

0103600357

X0000000068939X

**UNITED STATES**
**POSTAL SERVICE**

*Exhibit 26   p.292*

Page 2 of 2

### NOTICE OF INTENTION TO COLLECT A DEBT BY ADMINISTRATIVE OFFSET

REF:  Amount of past due debt owed to the U.S. Postal Service: $689.39   Account/TIN: 03600357

As reflected in previous correspondence, you have one or more outstanding debts to the Postal Service amounting to $689.39.  The Postal Service intends to collect your outstanding debt through referral to the U.S. Treasury - Debt Management Services (DMS) for collection by administrative offset from any available funds.

PLEASE READ THE FOLLOWING INSTRUCTIONS CAREFULLY TO DETERMINE WHAT ACTION YOU MAY TAKE TO AVOID REFERRAL.

REPAY YOUR DEBT:  If you acknowledge the validity of the Postal Service's claim and wish to repay the entire debt, submit a check or money order, payable to the U.S. Postal Service with your customer number on the memo line, for the full amount due to:
                Disbursing Office  -  Eagan Accounting Services
                2825 Lone Oak Parkway
                Eagan MN 55121-9640
Note: We will also accept a credit card payment for the full amount of the debt if you contact us at the phone number on the enclosed statement.

AGREE TO A REPAYMENT PLAN:  Contact us, agree to a repayment plan acceptable to the Postal Service, and make agreed upon payments.

In addition, provisions of the Debt Collection Act, 31 U.S.C. § 3716 provide you with the opportunity to exercise certain rights before the Postal Service may refer this debt for collection by administrative offset.

REQUEST FOR RECORDS:  You may request a copy of records related to this debt by contacting us at the address on the enclosed statement.

REQUEST A REVIEW IF YOU BELIEVE THE DEBT IS NOT OWED:  If you feel the existence or amount of this debt is incorrect, you may request a review of the Postal Service's determination of your indebtedness.  You may do so pursuant to the procedures in 39 CFR Part 966.  To begin this process, you must request reconsideration of the existence or amount of your debt from the Postal Service Accounting Service Center.  You or your representative may do so by sending your request, in writing, to the below address.  You must send your request within 30 days of the date you receive this notice.  In addition, if you were a bargaining unit employee covered by the National Agreement between the Postal Service and the American Postal Workers Union, AFL-CIO, at the time the debt was incurred, then you may have the right to file a grievance concerning the existence or amount of your debt pursuant to Article 15, Section 7 of the Collective Bargaining Agreement.

If you have filed a timely request for reconsideration, grievance, or judicial hearing, and Eagan Accounting Services has received such notification, the collection of the applicable debt will be stayed pending resolution.  To ensure our system accurately reflects this disputed status, you may contact our office.  Upon disposition, any applicable collection efforts will be enforced.

BANKRUPTCY:  If you have filed for bankruptcy and the automatic bankruptcy stay is in effect, you are not subject to offset while the stay is in effect.  Please notify us by sending evidence concerning the bankruptcy.

Please understand that making or providing any false or frivolous statements, representation or evidence, may subject you to penalties under the False Claims Act (31 U.S.C. 3729-3731), or other applicable statutes, and/or criminal penalties.

Please note that the Postal Service is not required to duplicate administrative review rights prior to collecting your debt by administrative offset. If you have already exercised your review rights as to this debt, then your request for review and/or grievance may be denied or dismissed.

If you choose not to exercise the above rights and/or do not voluntarily repay this debt within 30 days of your receipt of this notice, then the Postal Service will collect your outstanding debt by referral to DMS no earlier than 60 days following your receipt of this notice.

When the Postal Service takes this action, you will be contacted by DMS, and may be subject to additional fees and charges; have your debt reported to a credit bureau(s); and, if your debt is discharged, have it reported to the IRS as potential taxable income. If your account is not resolved through DMS, it may be forwarded by them to both a private collection agency and the Treasury Offset Program (TOP), as applicable. If sent to TOP, Treasury will reduce or withhold any of your eligible Federal and State payments by the amount of your debt. The Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996 authorize this process, known as "offset". Treasury is not required to send you a notice before your payment is offset. If any excess collections exist, the money will be refunded to you unless prohibited by law.
Payments eligible for offset include:
         *  Your income tax refunds;
         *  Your Federal salary pay, including military pay;
         *  Your Federal retirement, including military retirement pay;
         *  Your contractor/vendor payments;
         *  All other Federal and State payments not exempt from offset
Please note:  If you file a joint income tax return, you should contact the Internal Revenue Service before filing your return regarding the steps to take to protect the share of the income tax refund which may be payable to your spouse, who is not a delinquent debtor to the United States.

Note: The full text of 39 CFR Part 966 is available on-line:  http://about.usps.com/who-we-are/judicial/rules/rule966.htm. If you do not have access to the Internet, please contact our office to request a printed copy.

If you have questions please refer to the contact information under 'Question or Correspondence' on the enclosed statement.

Accounting Services

*Exhibit 29*
*p. 1 of 2*

Exhibit 562
**FLSA Code A**

| BRENTON   DL | 26-4567 | E 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 | 7 10 | H001 | A | 03 | 23 |
|---|---|---|---|---|---|---|---|

REGULAR RURAL CARRIER TIME CERTIFICATE

The assigned carrier is compensated as follows:

Week 1    31.50 hours at RSC R, attained step, and six trips EMA.

Week 2    40 hours at RSC R, attained step, plus 1.25 overtime hours over 40 at 150 percent of the same rate, and six trips EMA.

### 562.1  Regular Rural Carrier

#### 562.11  Pay

Regular rural carriers are compensated at the base annual rate, attained step for a 40-hour evaluated route divided by 2,080. The annual rate for RSC B is also the same salary. Overtime is calculated at 150 percent of this hourly rate.

***Example:***

Base Annual Rate (AR) for 40 hours at step 12 = $42,163

$42,163 ÷ 2,080 = $20,2707 (hourly rate)

$20,2707 × 150% = $30,4060 (OT rate)

#### 562.12  Leave

Compensation for leave is at the daily evaluated rate as determined in 561.3.



#### 562.13  Relief Day Worked - X Days

Regular rural carriers under FLSA code A assigned to J or K routes are not granted days off (X days) for working their assigned relief day (J or K day). Compensation is computed on actual hours worked. Therefore, work performed on the relief days is paid at that time.

### 562.2  Substitute Rural Carrier (Designation 72)

#### 562.21  Pay

Compensation is made at the base annual rate, attained step of a 40-hour evaluated route divided by 2,000. Add to this rate the annual COLA rate and



| WK | RSC/LEV | RATE | CODE | TYP | HOURS | PAY | | THIS PERIOD | YEAR-TO-DATE | ANNUAL LEAVE(AL) CAT: 6.00 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| X | DAY | BALANCE | | | 5 | | GROSS PAY | 2271 20 | 2271 20 | AL PRIOR YR BAL | 500 00 |
| | | | | | | | FED TAX S0 | 00 | 499 66 | + AL EARNED YTD | 000 00 |
| | | | | | | | ST TAX FLS0 | 00 | 00 | + AL HOL EARNED YTD | 000 00 |
| | | | | | | | RETIRE E | 00 | 00 | - AL USED YTD | 000 00 |
| | | | | | | | HEDICARE | 00 | 32 93 | = EARNED AL BAL | 500 00 |
| | | | | | | | UN R | 00 | 00 | + AL ADVANCED | 19 25 |
| | | | | | | | PODBT | 689 39 | ADJUST | = AVAILL AL BAL | 242 51 |
| | | | | | | | FED | 499 66 | ADJUST | AL USED THIS PP | 500 |
| | | | | | | | MEDIC | 32 93 | ADJUST | SICK LEAVE(SL) CAT: 4.00 | |
| | | | | | | | SOSEC | 140 81 | ADJUST | SL PRIOR YR BAL | 050 |
| | | | | | | | ALOT | 00 | | SL EARNED YTD | 000 00 |
| | | | | | | | SOSEC | 00 | 140 81 | - SL USED YTD | 000 00 |
| | | | | | | | | | | = CURRENT SL BAL | 050 |
| | | | | | | | | | | SL USED THIS PP | 000 |
| | | | | | | | | | | LEAVE WITHOUT PAY(LWOP) | |
| | | | | | | | | | | PAY PERIOD LWOP | 100 00 |
| | | | | | | | | | | PP01 TO CURRENT PP | 200 00 |

Collected by Fagan

**GROSS TO NET**

**LEAVE STATUS**

EARNINGS STATEMENT
PS FORM 1223-B, JUNE 1985

TERMINAL LEAVE
HRS 80.00 AMT 2271.20 NET PAY 908.41 USPS RETIREMENT 0.00

---

**UNITED STATES POSTAL SERVICE**®

FACE OF THIS DOCUMENT PRINTED IN RED, BLUE & GRAY INKS.

**PAYROLL CHECK**

Eagan MN 55121-9640

DATE 02-23-2018     G 64935067     50-937 213     CHECK No. R 62023007

VOID AFTER ONE YEAR

$****908DOLLARS41CENTS

$****908.41

PAY TO THE ORDER OF     HALA M FARID

JPMorgan Chase Bank, N.A.
Syracuse, NY 13212-4710

EmSchafen
TREASURER     MP

Security Features Included ⑤ Details on back

�串62023007⑤ ⑤021309379⑤ 844016790⑤

Exhibit 27

p. 2 of 2